## JOHN K. CUMMINGS REALTY & INVESTMENT COMPANY, Appellant, v. DEERE & COMPANY.

### Division Two, December 10, 1907.

1. **VACATING STREET: Power.** The Municipal Assembly and the mayor of St. Louis have power by ordinance to vacate a part of a public street, namely, a strip fifteen feet wide on one side of the street.

2. ———: **Injunction: Effect of Pleading: Public Nuisance.** A petition charging that defendant is obstructing a public street and threatening to appropriate fifteen feet of it to its own use, and asking that defendant be enjoined from so doing, must be considered as intending to charge that the defendant is threatening to do such unlawful acts respecting the street as would constitute a public nuisance.

3. ———: ———: ———: ———: **Void Ordinance.** And if the city ordinance vacating the public highway is void and the public nuisance is properly charged and plaintiff avers and shows he is specially injured beyond the public generally and other facts which authorize him to maintain suit to have the nuisance abated, the nuisance will be abated.

4. **PUBLIC NUISANCE: Insufficient Allegations.** But a petition, whose object is the abatement of a public nuisance, namely, the appropriation by a private corporation of fifteen feet of a public street vacated by a void ordinance, which does not charge that plaintiff is the owner of property abutting on the part of the street vacated, and does not charge that plaintiff's property is subjected to special injury different from and above that other property in the neighborhood similarly situated is sub-

Realty & Investment Co. v. Deere & Company.

jected to by the public nuisance, does not state a cause of action. To entitle a private corporation to maintain a suit to abate a public nuisance it must be made to appear that it suffers or will suffer an injury peculiar to itself, that is to say, an injury over and above and different in kind from that suffered or to be suffered by the public generally. In such case a private corporation is to be considered an individual.

5. ——: ——: Threatened Injury: Injunction. And the rule is the same whether the petition seeks to recover damages for an existing public nuisance, or to restrain by injunction the doing of acts which will constitute a public nuisance. In either case the public nuisance cannot be abated in the suit of a private individual as plaintiff unless he both charges and shows some injury special and peculiar to himself.

6. ——: ——: More Than Other Property. An allegation that plaintiff's property will be injured more than any other property in the city does not allege any injury peculiar to plaintiff.

7. VACATING STREET: Void Ordinance: Injunction: Necessary Parties. An injunction will not lie to restrain the enforcement of a city ordinance vacating a public street on which plaintiff's property does not abut, although an inconvenience in common with all other persons may be entailed upon him by the carrying out of the ordinance. In order to entitle plaintiff to injunctive relief it devolves upon him to charge and prove that he owns property abutting on the part of the street vacated.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*M. McKeag* and *C. S. Cummings* for appellant.

(1) Plaintiff's position is that the street in question was, at the time of the passage of the ordinance relied upon by defendant, a public highway, the property of the State, and held by the city of St. Louis only as trustee; that the provision of the charter, giving to the Municipal Assembly the power to "vacate, alter, widen, extend, or pave," was only intended for the improvement of the use of the street for public travel, for the public generally, and, if not needed for traffic, to vacate; that the dedication of this particular part

was more especially for those that would purchase lots in the subdivision; that the charter never intended to empower the Municipal Assembly to vacate a part of the street or make it narrower. No power is given to do so, or ever was intended. In this instance, under guise of vacation, its intention was plainly to sell and dispose of a part of the street to a private enterprise for private purposes, which is the effect of this ordinance. The vacation was not such a one as the charter required, and for that reason the actions of the Municipal Assembly and the Mayor, in the passage of this ordinance, were *ultra vires*. (2) The motives of the Municipal Assembly will be presumed according to what they accomplish, that which resulted and which follows as the natural and reasonable effect of the ordinance. This effect is that it is a sale of a part of the street. The city can not do indirectly what it can not do directly. (3) By this ordinance, if held to be valid, the Municipal Assembly loses entire control over it. If, at a future day, the city authorities would find it necessary to reopen this part of said street, it would have to condemn it and pay defendants therefor, and, if such were the case, plaintiff's property would fall within the district as being benefited and have to pay its share of the damages. All this matter has been reviewed in Cummings v. St. Louis, 90 Mo. 259, which case has never been overruled, and covers the very subdivision now in controversy and the principles of a trustee selling. This Cummings case has been affirmed in all its features in State ex rel. v. St. Louis, 161 Mo. 383. (4) It is further submitted that the ordinance in its present form is a violation of section 13 of article 3 of the city charter, inasmuch as it contains more than one subject, which are not clearly expressed in its title. The title is merely to vacate. Sec. 1 of the ordinance. This relates solely to vacation. Ordinance 21285 relates to and gives an option to certain property-owner

or owners on the south side of Monroe street. This section consequently gives the property-owners on the south side of Monroe street the power to put this ordinance into operation, and giving to these and delegating municipal power to them to say whether said ordinance ever should become a part of the municipal law. Glaessner v. Brew. Assn., 100 Mo. 580; Lockwood v. Railroad, 122 Mo. 86; State v. Murphy, 134 Mo. 348; Gaus, etc., Mfg. Co. v. Railroad, 113 Mo. 308; Railroad v. Mills, 85 Mich. 634; Brumit v. Virginia, etc., Co, 106 Tenn. 124; Lafayette v. Jenner, 10 Ind. 74; Cereghino v. Railroad, 26 Utah 467.

*Seneca N. & S. C. Taylor* for respondent.

(1) The position of appellant, that the title of the act does not sufficiently disclose its purpose, and that it contains more than one subject, is untenable. Hannibal v. County of Marion, 69 Mo. 571; State ex rel. v. Ranson, 73 Mo. 78; State ex rel. v. Shepherd, 74 Mo. 310; State v. Blackstone, 115 Mo. 427; State ex rel. v. Slover, 134 Mo. 10; Lynch v. Murphy, 119 Mo. 170; Ewing v. Hoblitzelle, 85 Mo. 71; State ex rel. v. Bronson, 115 Mo. 271; State ex rel. v. Hegge, 135 Mo. 112; State ex inf. v. Ins. Co., 152 Mo. 4; O'Connor v. Railroad, 97 S. W. 150. (2) The power being express and absolute, it was for the Municipal Assembly and the Mayor to decide whether the street or part of it should be kept open or vacated, not for the courts. State v. Clarke, 54 Mo. 36; Railroad v. Springfield, 85 Mo. 677; Glasgow v. St. Louis, 107 Mo. 198; Christian v. St. Louis, 127 Mo. 109; Heinrich v. St. Louis, 125 Mo. 424; Knapp, Stout & Co. v. St. Louis, 153 Mo. 560, 156 Mo. 344. (3) Injunction will not lie to restrain the enforcement of a city ordinance vacating a street when the petition does not allege that plaintiff is the owner of a lot abutting on the part of the street so vacated. Bailey v. Culver, 84 Mo. 531; Rude v. St. Louis, 93 Mo.

408; Fairchild v. St. Louis, 97 Mo. 85; Glasgow v. St. Louis, 107 Mo. 202; Heinrich v. St. Louis, 125 Mo. 424; Knapp, Stout & Co. v. St. Louis, 153 Mo. 560, 156 Mo. 353. (4) To enable plaintiff to maintain this action its damage must be special and peculiar to it and different in kind and not merely in degree from the injury sustained by other members of the community. (5) If plaintiff has been unlawfully injured it has a complete and adequate remedy at law. Therefore, injunction will not lie. Heinrich v. St. Louis, 125 Mo. 424; Christian v. St. Louis, 127 Mo. 109; Knapp, Stout & Co. v. St. Louis, 153 Mo. 575.

FOX, P. J.—This cause is brought to this court by appeal on the part of the plaintiff from a judgment of the circuit court of the city of St. Louis dismissing its bill in equity praying for injunctive relief against the defendant. To fully appreciate the nature of this proceeding and the legal propositions involved it is well to reproduce the petition and answer. The petition, omitting formal parts, is as follows:

"Plaintiff states that it is a corporation duly incorporated under the laws of Missouri, that the defendant is also a corporation incorporated under the laws of the State of Illinois.

"Plaintiff further states that Wm. Chambers, W. Christy and Thomas Wright were jointly owners in fee simple of a large tract of land which was then located in the county of St. Louis, but which is now, by the extension of the limits of the city of St. Louis, lying and being in the said city of St. Louis, Missouri; that on the 29th day of June, A. D. 1816, the said owners caused the same to be platted and laid out in lots, streets and alleys and filed a plat of said lands and lots and streets and alleys and dedicated the said streets and alleys to public use and more especially for the use of those who would become purchasers and owners of

lots or parcels of land in said lands so laid out and platted; that the said owners caused the said plat and dedication to be duly recorded in the recorder of deeds' office of the then county of St. Louis in Plat Book 1, vol. 1, page 40, to which plat reference is made for the purpose of locating the property owned by the plaintiff and the streets and alleys as laid out and dedicated by the said owners to public use for the especial benefit of the prospective purchasers of said lots in said tract of land.

"Plaintiff further states that it is the owner in fee simple of a part of said lands, so laid out by said owners in their said addition and sold after the dedication of the streets on said plat; that it acquired said lots by mesne conveyances from the said owners and improved the same for dwelling purposes, which lots are more particularly described as follows, to-wit: A lot fronting on Monroe street, fifty-two feet and six inches by an irregular depth of one hundred and thirty-seven feet 8½ inches on the west line of Eleventh street; bounded on the north by Monroe street, formerly Washington street, designated on said plat, and east by Eleventh street, formerly designated on said plat as Sixth street.

"Plaintiff further states that Monroe street as dedicated by the said Wm. Chambers, W. Christy and Thomas Wright has been used as a public highway for more than thirty years last past from Second street up to and past the plaintiff's property, it being as dedicated by said persons sixty feet in width. That the defendant is now claiming the right to divert a portion of Monroe street from the uses and purposes to which it was dedicated for a public highway, and threatening to appropriate it to its private use and place permanent obstructions thereon, so that it cannot be used by the public generally on the following part of said Monroe street, to-wit: A strip of ground fifteen feet in

width extending along the south side of Monroe street from the east line of Broadway to the west line of Second street.

"Plaintiff further states that if the defendant be permitted to carry out its purpose and convert said part of said street to its private use and benefit and to other and different uses and purposes than those designated and intended by the said Wm. Chambers, W. Christy and Thomas Wright, the plaintiff's property will be greatly damaged and will also depreciate in value, more especially than the general property in the city of St. Louis, being located on said Monroe street, near to where the obstruction and permanent diverting is threatened to occur and be placed by the defendant.

"Plaintiff further states that it is entirely remediless at law, that the city of St. Louis, the trustee upon which rests the duty to preserve the street as aforesaid for public use, is now aiding and attempting to further the defendant in its unlawful purpose and contemplation of diverting the said part of said street to its private use.

"Wherefore, your petitioner prays for a decree, that the defendant be enjoined and restrained from exercising any right or authority over the said part of Monroe street, hereinbefore described, which would be inconsistent with the uses and purposes for which it was dedicated, and that it be enjoined and restrained from erecting or placing any obstruction on said street or any part thereof which will in any manner interfere with the use of all parts of said street, as it was laid out, by the public generally, and for its costs in this behalf incurred."

To this petition the defendant interposed the following answer:

"Comes now the defendant in the above-entitled cause, and for answer to plaintiff's petition herein, denies each and every allegation therein contained.

"Further answering this defendant avers that it is the owner in fee simple of all that part of City Block No. 318, fronting northward upon Monroe street, extending from the east line of Broadway to the west line of Second street, in the city of St. Louis, and State of Missouri; that the property in said locality has become greatly deteriorated for residence purposes, or for any other purpose other than manufacturing business, and has been in that condition for several years last past. That in the year 1903, defendant was about to erect, and did begin the erection of a large manufacturing establishment upon said block, extending to the south line of said Monroe street, between said Broadway and Second street, which manufacturing establishment when completed will furnish employment for several hundred employees, thereby building up said part of the city, and thereby enhancing the value of defendant's property for revenue purposes, and increasing the income of the city of St. Louis, by reason of enhanced taxes upon its said property. That in order to utilize defendant's said land and the manufacturing establishment which it is erecting thereon, it became necessary to lower the grade of a fifteen-foot strip immediately north of defendant's said property, and which before the passage of the ordinance hereinafter specified, was a part of said Monroe street mentioned in plaintiff's petition.

"That in the month of November, 1903, the Municipal Assembly of the city of St. Louis passed a city ordinance vacating a strip of ground fifteen feet in width, extending along the south side of Monroe street from the east line of Broadway to the west line of Second street, which ordinance was to take effect upon the payment of three thousand dollars into the city treasury by the owners of the property on the south side of Monroe street from said east line of Broadway to the west line of Second street, and that subsequent

to the passage of city ordinance, this defendant did pay into said city treasury said sum of three thousand dollars in pursuance of the terms of said ordinance, and thereupon said fifteen-foot strip, being the one mentioned in plaintiff's petition, became vacated and became the property of this defendant; that said city ordinance is in words and figures as follows, to-wit:

" 'ORDINANCE.
(21285.)

" 'An ordinance to vacate fifteen feet on the south side of Monroe street between Broadway and Second street.

" 'Be it ordained by the Municipal Assembly of the City of St. Louis, as follows:

" 'Section One. A strip of ground fifteen feet in width, extending along the south side of Monroe street, from the east line of Broadway to the west line of Second street, is hereby vacated as a public thoroughfare and surrendered to the owners of the land in city block three hundred and eighteen respectively, contiguous to said strip.

" 'Section Two. This ordinance shall not take effect unless and until the sum of three thousand dollars is paid into the city treasury by the owner or owners of the property on the south side of Monroe street from the east line of Broadway to the west line of Second street, said sum to be the absolute property of the city of St. Louis.

" 'Approved November 17, 1903.'

"Defendant further avers that power and authority existed in the Municipal Assembly of the city of St. Louis, with the approval of the Mayor, to pass said city ordinance, and that the sum paid by said defendant was the full value of said strip of ground, and said three thousand dollars inured to the benefit of said city of St. Louis.

"Wherefore, having fully answered, defendant prays to be hence dismissed with its costs."

The plaintiff filed a demurrer to certain portions of the answer of the defendant, designating the grounds of such demurrer. This demurrer was overruled by the court and the plaintiff filed an amended reply denying each and every allegation and new matter set up in defendant's answer as a defense to plaintiff's cause of action, and as a further reply to defendant's answer it was averred that the pretended ordinance was *ultra vires* and void, assigning among the reasons that the title to the ordinance contained more than one subject and the subject of the title of the ordinance was not clearly embraced in the title. It was further charged that the ordinance was fraudulently procured under the guise of vacating a street or part of a street, and that the purpose of the ordinance was to sell and dispose of the part of the street heretofore indicated.

For the purpose of shortening the proof at the trial of this cause the following state of facts was admitted:

"First—That William Chambers, W. Christy and Thomas Wright were joint owners in fee simple of a large tract of land, which was then located in the county of St. Louis, but which is now, by the extension of the limits of the city of St. Louis, a part of the city of St. Louis, and State of Missouri, and that on the 29th day of June, 1816, the said owners caused the same to be platted and laid out with streets and alleys, dedicated to the public use; and that said plat was duly recorded in the office of the recorder of deeds of the then county of St. Louis, in Plat Book 1, volume 1, page 40, and that the certified plat hereto annexed as 'Exhibit A' is a true copy of said plat and dedication.

"It is further admitted that both the plaintiff

and defendant are corporations, as alleged in the petition filed in said case.

"It is further admitted that the plaintiff is owner in fee simple, and in possession of the following described lots or parcels of land, which are a part of the land covered by said plat and dedicated, to-wit:

"A lot fronting on Monroe street, fifty-two feet and six inches, by an irregular depth of one hundred and thirty-seven feet, eight and one-half inches, on the west line of Eleventh street, bounded on the north by Monroe street, formerly Washington street, designated in said plat, and east by Eleventh street, formerly designated on said plat as Sixth street, but said Sixth street as shown by said plat is now known and designated as Eleventh street, in the city of St. Louis and State of Missouri.

"It is further admitted that Monroe street on said plat, as dedicated, was called Washington street, but is now known as Monroe street, and that the same has been used as a public highway for more than thirty years last past from Second street up to and past the plaintiff's property, and that said Monroe street was a street sixty feet in width.

"It is further admitted that the defendant was the owner, in fee simple, of all that part of City Block No. 318, fronting northward upon Monroe street and extending from the east line of Broadway to the west line of Second street, of the city of St. Louis, and State of Missouri, and was, at the time of the passage of the ordinance mentioned in the pleadings, and it had been such owner for a period of about two years before the passage of said ordinance.

"It is further admitted that both plaintiff and defendant herein obtained their title by mesne conveyances from William Chambers, W. Christy and Thomas Wright, who were the owners of said property

at the time of the laying out and dedicating the same on the 29th day of June, 1816.''

In addition to this agreed statement of facts the plaintiff introduced John K. Cummings, who testified that he was living on Monroe street; that it was only three blocks west of the block where the strip was to be taken off Monroe street by vacating that width on Monroe street. He also stated that by the taking off of said street his property would be depreciated in value. There were other witnesses introduced whose testimony tended to show that if the fifteen feet of the street as heretofore mentioned was vacated there would hardly be room for a wagon going either way, and after the necessary space would be used for sidewalks large stake wagons could hardly pass each other. There was other testimony tending to show that there was a good deal of travel on Monroe street and that the vacation of it as sought by the ordinance would inconvenience those who were in the habit of using it, or wanted to use it.

The defendant introduced the ordinance as set forth in the answer; also introduced testimony showing the payment of the three thousand dollars into the city treasury; then introduced in evidence a deed dated February 28, 1903, by which the defendant acquired title to the real estate extending from Broadway to Second street and fronting north on Monroe street contiguous to the fifteen feet vacated on the south side of Monroe street by the ordinance in question.

This was substantially all the evidence introduced at the trial. The cause was submitted to the court and on August 24, 1904, the court rendered its judgment and entered an order dismissing plaintiff's bill for an injunction. Timely motion for new trial was filed and on the 26th day of October, 1904, this motion was overruled. From the order and judgment made in this cause plaintiff, in due time and proper

form, prosecuted its appeal to this court and the record is now before us for review.

## OPINION.

In this cause, as indicated by the record, plaintiff seeks to enjoin the defendant from placing any obstruction or building upon a strip of ground which formerly constituted a part of Monroe street, which the city of St. Louis, by the ordinance as heretofore indicated, undertook to vacate. This proceeding is mainly predicated upon the theory that the plaintiff is a property-owner in the city of St. Louis and that the fifteen feet of ground sought to be used by the defendant constitutes a part of a public thoroughfare and that the ordinance passed by the city council and approved by the Mayor is void, and that the vacation of that portion of the street and the occupancy of it by the defendant is injurious and depreciates the value of the property of the plaintiff.

It is conceded that the plaintiff is not an abutting property-owner upon the street a part of which was sought to be vacated; that this property which is alleged to be damaged by reason of the placing of the obstructions and buildings upon the strip of fifteen feet, which was vacated, is situated a distance of three blocks from the part of the street which was sought to be vacated by the action of the city council with the approval of the Mayor.

At the very threshold of the consideration of this cause we are confronted with the proposition as to whether or not under the allegations in the petition and the disclosures of the facts upon the trial the plaintiff is in a position to maintain this proceeding for injunction to restrain the occupancy of the strip of land which formerly constituted a part of Monroe street, which the city council by ordinance, duly approved by the Mayor, sought to vacate.

## I.

That the Mayor and Municipal Assembly of the city of St. Louis possessed the power to establish, open, vacate or alter the streets and avenues, etc., in said city cannot be questioned. Section 26 of article 3 of the charter provides, that "the Mayor and Assembly shall have power within the city, by ordinance not inconsistent with the Constitution or any law of the State or of this charter . . . . to establish, open, vacate, alter, widen, extend, pave or otherwise improve and sprinkle all streets, avenues, sidewalks, alleys, wharves, and public grounds and squares, and provide for the payment of the costs and expenses thereof in the manner in this charter prescribed."

## II.

That the Mayor and Municipal Assembly, by the enactment of ordinance No. 21,285, as heretofore indicated in the statement of this cause, undertook and sought to vacate the strip of ground involved in this proceeding also cannot be questioned. Section one of that ordinance expressly provides that "a strip of ground fifteen feet in width, extending along the south side of Monroe street, from the east line of Broadway to the west line of Second street, is hereby vacated as a public thoroughfare and surrendered to the owners of the land in city block three hundred and eighteen respectively, contiguous to said strip."

It is not contended in this proceeding that the plaintiff is an abutting owner of property, or that his property is subjected to special injury different from that other property in the neighborhood, similarly situated, is subjected to. In our opinion, upon the disclosures of the record, the plaintiff is not entitled to the injunctive relief prayed for in its petition. If the plaintiff seeks to maintain this equitable proceeding to restrain the threatened unlawful acts alleged in the

petition, it must be upon the theory that, according to the earnest contention of the appellant in the brief before us, the ordinance vacating the strip of ground in Monroe street is void and that the defendant threatens to do such acts respecting the occupancy of such street and place such permanent obstructions upon such public thoroughfare as would in law constitute a public nuisance. In fact we see no escape from the conclusion from the allegations in the petition that appellant intends to charge that the defendant is threatening to do such unlawful acts respecting such street as would constitute a public nuisance. The petition upon this subject avers that "the defendant is now claiming the right to divert a portion of Monroe street from the uses and purposes to which it was dedicated for a public highway, and threatening to appropriate it to its private use and place permanent obstructions thereon, so that it cannot be used by the public generally on the following part of said Monroe street, to-wit: A strip of ground fifteen feet in width, extending along the south line of Monroe street from the east line of Broadway to the west line of Second street."

It must be conceded that if the insistence of the appellant is correct and that the ordinance undertaking to vacate part of Monroe street is void, then there can be no dispute that the acts complained of in the petition, in which it is averred what the defendant is threatening to do, would, under the well-settled rules of law applicable to the subject of nuisances, constitute a public nuisance. In effect the charge is that the defendant threatens to take possession of part of a public thoroughfare dedicated to the public and place thereon permanent obstructions. This beyond question, if the allegations are true, would constitute a public nuisance. But aside from this, conceding for argument's sake that the ordinance which undertakes to

vacate the fifteen feet of ground in Monroe street is void, and that the defendant is threatening to commit such unlawful acts as would amount to a public nuisance, does the plaintiff's bill embrace all the essential allegations necessary to constitute a cause of action and entitle it to the equitable relief sought? We have reached the conclusion that it does not. Upon the theory now under discussion, that this proceeding is to restrain the commission of such acts respecting a public thoroughfare as would in law amount to a public nuisance, the plaintiff in its petition does not show that it has suffered or will suffer any damage peculiar to itself. The rule of law applicable to the maintaining of actions by individuals respecting injuries or threatened injuries resulting from public nuisances, is no longer an open question in this State, and in the case at bar the plaintiff must be treated as an individual, for it is under the law an artificial person. In Nagel v. Railroad, 167 Mo. 89, the plaintiff sought to enjoin defendants from constructing a street railway in Hamilton avenue in St. Louis. An analysis of the petition in that case demonstrates its similarity to the petition in the case at bar. It was charged in the petition that the ordinance was illegal and void on the ground that it was fraudulently and corruptly passed by the Municipal Assembly of said city. Then followed the allegation that the defendants were about to unlawfully and forcibly enter in and upon said Hamilton avenue adjacent to and in front of the said real estate property of plaintiff, for the purpose of constructing and operating a street railway in and upon the said Hamilton avenue, and have hauled and deposited rails and ties, *or are about to deposit rails and ties* upon the surface and have dug up or about to have dug up the surface and tear up and remove the paving from said Hamilton avenue, and have or about or

208 Sup—6

threaten to occupy and obstruct said avenue with horses, men, timbers, street car tracks, street cars, electric wires and poles, and other obstructions, and that the accomplishment of such purpose would temporarily and permanently impair the use of said Hamilton avenue as a public thoroughfare, thereby preventing these plaintiffs from going to and from their respective real estate property over and along said Hamilton avenue, and thereby greatly depreciating the value and damaging their respective real estate property and their personal property to the great and irreparable injury to plaintiffs' said property. It is manifest under the petition in that case that the plaintiffs were proceeding upon the theory that the doing of the threatened acts by the defendants would constitute a public nuisance. This court, speaking through VALLIANT, J., adhering to the well-settled rule that in cases of that character the petition should allege that by reason of the acts about to be committed the plaintiffs would suffer some damage peculiar to themselves, thus stated the law applicable to the sufficiency of the petition in that case: "The plaintiffs in their petition do not show that they have suffered or will suffer any damage peculiar to themselves. They do say that the defendants, preparatory to constructing the railroad, are depositing rails and ties and are tearing up the street and obstructing its use, etc., and 'thereby preventing these plaintiffs from going to and from their respective real estate property over and along said Hamilton avenue,' etc. But those statements relate to the inconvenience resulting in the necessary work of construction and are such as result in every street construction. The damage resulting from the condition does not entitle the plaintiffs to an injunction of the kind sought in this suit."

In Baker v. McDaniel, 178 Mo. 447, there was in judgment before this court the proposition of the right

of an individual to maintain an action for injuries resulting from a public nuisance, and it was there expressly ruled by this court that to enable plaintiff to maintain an action of that character, resulting from a public nuisance, it was necessary to establish that there was special damage sustained by reason of such nuisance over and above the injury which the community at large suffered. All of the authorities upon the subject of actions concerning private and public nuisances were reviewed and it was announced that the true rule to be deduced from all the authorities was that as to private nuisances there is no question as to the proper exercise of the power of courts of equity in affording full and complete relief, but as to a public nuisance it was essential and should be made clear that some special injury was occasioned to the individual, and it was there announced that in cases of a public nuisance, where the injury complained of was a continuing one and that some special injury was occasioned to the individual, courts of equity might exercise their power and afford relief, but that this power in cases of public nuisances was usually exercised at the instance of the public and not private individuals.

In Smiths v. McConathy, 11 Mo. l. c. 522, Judge NAPTON, in discussing this question, said: "In an action for a private nuisance, it is not necessary to allege or prove any special damage. In a private action for a public nuisance, such allegations and proofs are necessary. No one individual can maintain an action for a public nuisance, unless he has sustained some special damage from such nuisance, over and above the injury which the community at large suffer."

In Thompson & Son v. Macon City, 106 Mo. App. 84, a similar ruling was made and it was there held, in a suit by individuals for damages resulting from obstructions in a public street, that it was essential to show that plaintiffs had sustained damages of a dif-

ferent kind from that suffered by others along the street within the limits of the work, and the mere fact that they may have suffered more than some others did not alter the rule that in order to entitle them to damages they must have sustained injuries special to themselves and different in kind from others, citing in support of such holding Fairchild v. St. Louis, 97 Mo. 85; Canman v. St. Louis, 97 Mo. 92; Rude v. St. Louis, 93 Mo. 408; Ruckert v. Railroad, 163 Mo. 260; Nagel v. Railroad, 167 Mo. 89.

It may be said as to the cases of Baker v. McDaniel, Smiths v. McConathy, and Thompson & Son v. Macon City, heretofore cited, that those were actions concerning the commission of acts which constituted a nuisance and where the nuisance was in existence, and that in the case at bar this action is to prevent the doing of acts which in law would amount to a nuisance. In our opinion it must logically follow that the same principle applicable to the cases cited must govern and control the case at bar. If it is essential where an individual seeks a recovery for injuries resulting from an existing public nuisance, to allege and prove that he has suffered special damages of a different kind and character to those similarly situated, we are unable to see how it is not equally essential, if he undertakes to prevent the doing of acts, which in law would amount to a public nuisance. In Nagel v. Railroad, supra, the averments in the petition proceeded upon both theories, that is, that the defendant was committing certain acts or was threatening the commission of certain acts which in law would constitute a nuisance, and in that case this court held that it was essential that the plaintiffs should allege in their petition that they had suffered some damage peculiar to themselves. Applying these rules as heretofore indicated, applicable to the subject of pleading, where an individual seeks to maintain an action concerning a

public nuisance, we see no escape from the conclusion that the allegation in the petition of plaintiff in the case at bar is manifestly insufficient. The allegations in respect to the damages are embraced in these words: "The plaintiff's property will be greatly damaged and will also depreciate in value more especially than the general property in the city of St. Louis, being located on said Monroe street near to where the obstruction and permanent diverting is threatened to occur and be placed by the defendant." That allegation simply amounts to a statement, not that its property will be specially damaged, but that it will be damaged more than the general property in the city of St. Louis, and that is not a sufficient allegation under the rules of law as has been announced by the courts of this State. As was said by Judge ELLISON in Thompson & Son v. Macon City, "it may be that he suffered more than some others, but that will not alter the rule that in order to entitle him to damages he must have sustained injury special to him and differing in kind from others."

Our conclusion upon this proposition is that plaintiff's petition does not state facts sufficient to entitle it to the relief sought, for the reason, assuming the truth of the allegations of the petition that the ordinance vacating this street was void, then it necessarily follows that the acts which it is alleged the defendant was about to commit would amount in law to a public nuisance, if committed, and this proceeding not being instituted by some public officer authorized to maintain it in behalf of the public, but by an individual, or in other words, an artificial person, it is essential to allege that the plaintiff will suffer some damage peculiar to itself, and not having made such allegation it must be held that the petition is insufficient. If on the other hand it is sought to maintain this action upon the theory that, by reason of the action of the Municipal As-

sembly of the city of St. Louis vacating a part of Monroe street, which resulted in injury to the property of plaintiff, the enforcement of the city ordinance vacating such street may be restrained, then we are confronted by the repeated announcements by this court of the rule of law that an injunction will not lie to restrain the enforcement of a city ordinance vacating a street on which plaintiff's property does not abut, although an inconvenience in common with all other persons may be entailed by reason of the action of the Municipal Assembly in adopting the ordinance.

This court, in Glasgow v. St. Louis, 107 Mo. l. c. 204, speaking through Judge BLACK, said in discussing the subject now under consideration: "The charter of the city of St. Louis gives the Mayor and Assembly power, by ordinance, 'to establish, open, vacate, alter, widen . . . . all streets, sidewalks, alleys,' etc. Under such a power the Municipal Assembly may vacate a street or part of a street without any judicial determination. And such a power, 'when exercised with due regard to individual rights, will not be restrained at the instance of a property-owner claiming that he is interested in keeping open the streets dedicated to the public.' [2 Dillon, Mun. Corp. (4 Ed.), sec. 666.] There is no doubt but a property-owner has an easement in a street upon which his property abuts, which is special to him, and should be protected; but here the plaintiffs own no property fronting or abutting on the part of the street which was vacated. Their property is surrounded by streets not touched or affected by the vacating ordinance. They will be obliged to go a little further to reach Twelfth street, but that is an inconvenience different in degree only from that suffered by all other persons, and it furnishes no ground whatever for injunctive relief. [Bailey v. Culver, 84 Mo. 531.]"

In Knapp, Stout & Co. v. St. Louis, 153 Mo. l. c.

572, the principle and rule of law announced in the Glasgow case as heretofore cited, was unqualifiedly approved, and Judge GANTT, in discussing the subject of the essential averments in cases of this character to entitle plaintiff to the relief sought, used this language: "Moreover, to entitle plaintiff to relief as an adjoining proprietor it devolved upon it to allege and prove that it owned property fronting or abutting on the part of the street which the ordinance in question vacated. In a word, it must aver facts which show it will suffer a special or peculiar injury and not merely such inconvenience as is cast upon all other persons of that neighborhood," citing in support Glasgow v. St. Louis, 107 Mo. loc. cit. 205; Van De Vere v. Kansas City, 107 Mo. 83; Rude v. St. Louis, 93 Mo. 408; Fairchild v. St. Louis, 97 Mo. 85.

In Knapp, Stout & Co. v. St. Louis, 156 Mo. 343, the doctrine announced in the previous cases of Glasgow v. St. Louis, and Knapp, Stout & Co. v. St. Louis, 153 Mo. 560, that to entitle a plaintiff to injunctive relief it was necessary to allege that the property owned by the plaintiff fronted or abutted on a portion of the vacated street, was fully approved.

That the Municipal Assembly by the ordinance as herein indicated sought to vacate a part of Monroe street, there can be no dispute, and in Heinrich v. St. Louis, 125 Mo. 424, it was expressly decided that the city of St. Louis had the power to vacate streets and alleys and that it was for the Municipal Assembly and not the courts to say when that power was to be exercised. Judge BLACK, in the Glasgow case heretofore referred to, in discussing the intentions of the Municipal Assembly in passing the ordinance, said: "There is no doubt but the Municipal Assembly, in enacting the ordinance, intended to aid and foster a large manufacturing industry; but it is equally clear that the ordinance was passed with due regard to the

public interests. The evidence entirely fails to show any fraud on the part of the city authorities, or any combination to injure any one. Nor does the evidence show that the ordinance was an unreasonable one. Whether the street should be kept open or vacated was purely a matter of expediency, and that was a question for the Municipal Assembly and not for the courts to decide,'' citing numerous authorities.

Learned counsel for appellant directs our attention to the case of Cummings v. St. Louis, 90 Mo. 259, and insist that the conclusions announced in that case are decisive of the controverted legal propositions involved in the case at bar. We are unable to agree with learned counsel upon this insistence. The same learned and esteemed judge that wrote the opinion in the Cummings case also wrote the opinion in the Glasgow case, and in the Cummings case it is expressly recited that there could be no claim by the city that it was acting in the exercise of the power conferred upon the assembly to vacate streets, and Judge BLACK expressly stated in the Glasgow case that ''it must be remembered that the city is here pursuing a power to vacate streets, conferred upon it in express terms, so that Cummings v. St. Louis, 90 Mo. 265, and some other cases cited by the appellants, have no application to this controversy.''

The law as announced applicable to the disclosures of the record in the Cummings case was not criticised or even discussed in the subsequent cases of Knapp, Stout & Co. v. St. Louis in the 153 Mo., and the case between the same parties in the 156 Mo., and in the Glasgow case, Judge BLACK, who wrote both opinions, disposes of that case by saying that it has no application to the disclosures of the record in the case he had in hand; therefore, we see no escape from the conclusion that the rule announced in the Cummings case has no application to the disclosures of the record in the

case now before us.  However, we deem it unnecessary to pursue this subject further, for in our opinion, the allegations contained in the petition that the ordinance vacating part of Monroe street was void and of no effect, negative the theory that plaintiff is seeking by this action to restrain the enforcement of an ordinance vacating a public street, and this cause as presented must stand or fall upon the first theory of this case discussed, that is, that the ordinance vacating the street being void, the defendant threatening to take possession of a part of a public thoroughfare and place thereon permanent obstructions, which in law if the threatened acts were consummated would amount to a public nuisance, by this action it is sought by injunction on the part of an individual or an artificial person to prevent the commission of such acts as would constitute a public nuisance.  We have heretofore fully discussed that particular theory of this case and pointed out the insufficiency of the petition, hence there is nothing remaining to be said except to announce the result of our conclusions, which is, that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.