TOMAZEWSKI *v.* PALMER BEE CO.

1. HIGHWAYS AND STREETS—VACATION OF STREET—RIGHT OF LOT OWNER TO OBJECT.

> A lot owner's right to object to the vacation of a part of a street depends upon whether his lot abuts upon or comes in actual contact with the vacated portion, or access to his lot is entirely or materially cut off by reason of the vacation.

2. SAME—INCONVENIENCE MERELY GIVES NO RIGHT TO COMPLAIN—DAMNUM ABSQUE INJURIA.

> If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is *damnum absque injuria.*

3. SAME—LOT OWNERS HAVE NO INEXTINGUISHABLE EASEMENT IN STREETS.

> Lot owners in a plat dedicating streets and alleys acquire no inextinguishable easement in all the streets and alleys thereon whether necessary for ingress and egress or not.

4. SAME—INJUNCTION—SUFFICIENCY OF SHOWING.

> In a suit by property owners to enjoin the vacating of a portion of a village street and alleys and to vacate another street and relocate it, where it appears that none of the plaintiffs have property abutting upon the vacated streets, and that by the proposed action some of the plaintiffs will have better access than before, while others will have to go 436 feet farther, and that none are deprived of ingress and egress to and from their homes, plaintiffs have not made a showing entitling them to the relief sought.

5. SAME—ABUSE OF DISCRETION—FRAUD—REVIEW.

> Where, under the statute, a village council had power to vacate streets and alleys, and in the exercise of that power the proceedings were regular, in the absence of clear abuse of discretion or fraud the courts will not review

---

On right of property owner whose means of access from one direction is shut off or interfered with by closing of adjoining street, or portion of street on which he is situated, see notes in 2 L. R. A. (N. S.) 269; 30 L. R. A. (N. S.) 637; 52 L. R. A. (N. S.) 889.

the action of the council determining the necessity of vacating certain streets.

Appeal from Wayne; O'Brien (Patrick H.), J., presiding. Submitted April 26, 1923. (Docket No. 22.) Decided July 19, 1923.

Bill by Mike Tomazewski and others against the Palmer Bee Company and others to enjoin the vacating of certain streets and alleys. From a decree for plaintiffs, defendants appeal. Reversed, and bill dismissed.

*Willard & Czarnecki* (*Wallace Visscher*, of counsel), for plaintiffs.

*Clark, Emmons, Bryant & Klein*, for defendants.

WIEST, C. J. This is a suit to restrain the vacating of a portion of Dyar avenue and certain public alleys and to vacate Norwalk avenue and relocate it in the village (now city) of Hamtramck, as ordered by the village council. Certain premises were subdivided east of the Detroit, Grand Haven & Milwaukee railroad, between Kenwood and Westminster (now Poland) avenues, and in the plat thereof as recorded, Dyar avenue, running north and south through the plat, and Norwalk avenue, running east from Dyar avenue to Dequindre street, and alleys paralleling Dyar avenue were dedicated to the public. Plaintiffs are owners of residences on Dyar avenue between Norwalk and Kenwood avenues. The whole of the subdivision south of Norwalk avenue and for 95 feet north of that avenue and west to the railroad right of way is owned by defendant company and was purchased for a factory site. When purchased by defendant company the land lay as an open common used as a dumping ground, with Dyar avenue and the alleys wholly unimproved. Desiring to erect a large

factory building on the premises defendant company
asked the village council to vacate Dyar avenue and
the alleys within the limits of its premises and to
vacate Norwalk avenue and relocate it 95 feet farther
north.    This request was at first denied because of
refusal by defendant company to accede to certain re-
quirements of the council, but was renewed and, by
preliminary resolution of the council, the matter was
set for public hearing.    Many hearings were had and
several of the plaintiffs, aided by an attorney, ap-
peared before the council and actively opposed the
granting of the proposed vacation and there urged
practically the same reasons as here put forth.

December 6, 1921, at a meeting of the full village
council of six members, and by vote of five members,
one refusing to vote, the council determined that the
closing of the portions of the avenues and alleys, as
asked for, would constitute a public improvement and
be a benefit to the community at large and, by ordi-
nance, "vacated, discontinued and abolished" such
portions of the avenues and alleys, making mention, in
the ordinance, of the terms agreed upon between the
village and defendant company, in substance as
follows: Defendant company to pay the village the
cost of the water main in Dyar and Norwalk avenues,
the expense of taking up and resetting fire hydrants
on the corner of Dyar and the new location of Norwalk
avenue, the cost of connecting lateral sewers includ-
ing manholes, to dedicate to the village the land neces-
sary to establish Norwalk avenue at its new location
from the alley west of Dyar avenue to Dequindre
street, to pay the cost of paving the new Norwalk
avenue from Dyar avenue to Dequindre street and
cinderize the avenue from Dyar avenue west to the
alley, to pay for a sidewalk on the north side of
Norwalk avenue from Dyar to Dequindre and to give
bond to do so.    The necessary land for the new

Norwalk avenue was deeded to the village by defendant company and the bond for performance of the agreement given before adoption of the vacating ordinance.

Plaintiffs claim they

"are vested with certain indefeasible rights in the nature of rights of ways and easements over said thoroughfare (Dyar avenue) beyond the rights of the usage by the general public, that the property of plaintiffs has a higher value by reason of the fact that said Dyar avenue is a through thoroughfare, and that plaintiffs have invested their moneys in the purchase and development of their properties by virtue of the fact that said Dyar avenue was so dedicated, platted and laid out as a public highway."

They also allege they have suffered great damage by way of depreciation in value of their several properties by reason of the threatened closing of Dyar avenue,

"that the closing of the dedicated and platted streets set forth in the ordinance will deprive plaintiffs of their property without due process of law, and for which they will receive no compensation, and amounts to the condemnation of private property for the financial gains of said defendant, Palmer Bee Company."

The regularity of the proceedings leading to the adoption of the ordinance is not questioned. It was alleged in the bill, but wholly abandoned at the hearing, that some sinister influence was brought to bear upon the members of the village council by the defendant company. In the brief of counsel for plaintiffs it is stated that the vacation will interfere with their ordinary means of ingress and egress to their homes and "they will live, shut in, as it were, in a blind alley." This overstates the situation. None of the plaintiffs have property abutting upon the vacated parts of the streets. Norwalk avenue will

exist for a greater length within 95 feet of its former location and will give some of plaintiffs better access to the alley west of Dyar street than they had before. Dyar avenue in front of the homes of plaintiffs is untouched by the vacation, and will still connect as it now does with Kenwood avenue at the north of their block and Norwalk at the south. To get to the point where Dyar avenue now strikes Poland avenue from their residences plaintiffs will have to go 436 feet farther if the vacation stands. We understand that Dyar avenue ends at the south at Poland street and therefore such of plaintiffs who want to go east on Poland avenue will not have any additional distance to travel and in going west on Poland will have but 436 additional feet to go.

Other factories are near to plaintiffs' properties and there appear to be no building restrictions, so we are not concerned with the mere location of a factory upon the land of defendant company. The learned circuit judge entered a decree restraining operation of the ordinance.

The question of eminent domain is not involved. By no stretch of imagination can it be said that property rights of plaintiffs are taken. Mere inconvenience in having to go around the east half of the block next south, instead of through it, constitutes no taking of the property of plaintiffs. It is a well settled rule that a lot owner's right to object to the vacation of a part of a street depends upon whether his lot abuts upon or comes in actual contact with the vacated portion, or access to his lot is entirely or materially cut off by reason of the vacation. That he may be inconvenienced or that he may have to go a more round-about way to reach certain points does not bring to him any injury different in kind from the general public but only in degree. If means of ingress and egress are not cut off or lessened in the

block of the abutting owner but only rendered less convenient because of being less direct to other points in the city and made so by the vacation of the street in another block such consequence is *damnum absque injuria.*    *Buhl* v. *Union Depot Co.*, 98 Mich. 596 (23 L. R. A. 392).    See, also, *Baudistel* v. *Railroad Co.*, 113 Mich. 687; *Cummings Realty & Investment Co.* v. *Deere & Co.*, 208 Mo. 66 (106 S. W. 496, 14 L. R. A. [N. S.] 822) ; *Kinnear Manfg. Co.* v. *Beatty*, 65 Ohio St. 264 (62 N. E. 341, 87 Am. St. Rep. 600) ; 3 McQuillin, Municipal Corporations, § 1410; 2 Elliott, Roads & Streets (3d Ed.), § 1181.    When the rule, *damnum absque injuria,* applies there can exist no such thing as taking private property.    But it is contended that plaintiffs, as owners of lots in the block north of the cross street, south of which the street was vacated, have a perpetual easement in the whole length of the street as dedicated in the plat of which their lots are a part.    In support of this counsel for plaintiffs cite *Horton* v. *Williams*, 99 Mich. 423.    The *Horton Case* carries no warrant for holding that a purchaser of a lot, in a plat dedicating streets and alleys, acquires an inextinguishable easement in all streets and alleys thereon whether necessary for ingress and egress or not.    The *Horton Case* related to an alley upon which plaintiff's property abutted in the very block affected by the vacation and is no support for the contention made.    To adopt plaintiffs' contention would prevent all adjustments to needs as they arise and render the statute granting municipalities power to vacate streets a dead letter.

In *Kinnear Manfg. Co.* v. *Beatty, supra,* plaintiffs' contention is well answered:

"We see no good reason for holding, as seems to be contended, that the rule is different as to the streets and alleys of an addition to the plat of a city; that in such case there is an implied covenant that the streets and alleys, indicated on the plat, are to remain

open for public use, and that each owner of a lot in the addition may insist on this covenant. In our view the streets and alleys in every addition to a city become a part of its general system of public ways, over which the city through its council and other agents has the same control that it has over each and every part of the system; and that the rights of lot owners in the addition to the use of the streets and alleys, indicated on the recorded plat, are the same, but not greater, than are the rights of any lot owner upon a street or alley."

See, also, *German Lutheran Church* v. *City of Baltimore,* 123 Md. 142 (90 Atl. 983, 52 L. R. A. [N. S.] 889, Ann. Cas. 1916C, 231).

Plaintiffs have an easement appurtenant in Dyar avenue, in the block upon which their lots abut and the alleys in the same block, and this carries right of ingress and egress to their lots thereover and to outlet over cross streets at each end of the block, but no right to stay municipal legislative action affecting Dyar avenue beyond such block, nor so far as Norwalk avenue has been ordered relocated north of its present location.

Under the statute the council of the village of Hamtramck had power to vacate the streets and alleys in question, and whether such streets and alleys should be vacated or kept open was wholly a matter of expediency, and this was a question for the council and not for the courts to decide. *Glasgow* v. *City of St. Louis,* 107 Mo. 198 (17 S. W. 743). In the absence of clear abuse of discretion or fraud the courts may not review the action of the council determining the necessity of vacating streets. As a result of the vacation the land in the streets and alleys discontinued reverts to defendant company by operation of law and plaintiffs complain of this, insisting that the vacation was for the advantage of a private corporation and the act of the council was, therefore, *ultra vires.*

In *Ponischil* v. *Hoquiam Sash & Door Co.*, 41 Wash. 303 (83 Pac. 316), it was held (quoting from the syllabus) :

"The fact that the vacation of a street is for the benefit of the petitioner does not show such fraud or abuse of discretion as to authorize a court of equity to interfere."

In that case the vacation was to enable a private corporation to use the vacated portion of the street for a large manufacturing plant? See, also, *Knapp, Stout & Co.* v. *City of St. Louis*, 156 Mo. 343 (56 S. W. 1102) ; *Glasgow* v. *City of St. Louis, supra; Kean* v. *City of Elizabeth*, 54 N. J. Law, 462 (24 Atl. 495) ; *Village of Bellevue* v. *Improvement Co.*, 65 Neb. 52 (90 N. W. 1002).

The decree entered in the circuit is reversed and a decree will be entered here dismissing the bill, with costs to defendants.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.