ROBERTSON, Justice:
The appellees alleged in their declaration that on or about April 16, 1964, Interstate Highway No. 59 was constructed on lands west of theirs, and that this construction resulted in the severing and closing of a portion of a county gravel road southwest of their property, and that all means of ingress and egress were thus cut off to their property.
The appellees further alleged that the-only way they can now reach other public roads is by travelling first on a private road which adjoins their property. They now must journey to the town of Heidelberg, seven miles distant, to get their mail.
About ten years ago the eighty-two acres owned by the father of M. O. Myers was divided between the plaintiff, M. O. Myers, and his brother, J. E. Myers. M. O. Myers got the north forty-one acres and J. E. Myers the south forty-one acres.
No part of the county dirt and gravel road, which was severed by Interstate Highway 59, is on the property of plaintiffs. It leaves a hard surfaced county road to the southwest of plaintiffs’ property, continues east across the lands of Mrs. Howard Ulmer and apparently dead-ends on the property of J. E. Myers to the south of plaintiffs’property.
The rural mail carrier, John C. Thead, testified that when the post office department regulations were liberalized about three years ago to require only two families per mile, he then began to travel the dirt gravel road into the J. E. Myers property to deliver mail to a box on the J. E. Myers property for the M. O. Myers’ and J. E. Myers’ families.
Plaintiff, M. O. Myers, testified that he farmed his lands until he suffered a heart attack a few years ago, and now uses his lands only for growing timber. He and his wife do live there in a three room house.
Myers now gets his mail about four times a week by going to Heidelberg, seven miles distant, on a hard surfaced road of the Gulf Oil Corporation which adjoins his property on the east and runs into a county gravel road.
*411 His testimony was that he attended church regularly, and that the only way that he could get to church was over the Gulfs road.
Myers further testified that he had never "been stopped and told to stay off the Gulf road. Howard Ratcliffe, a witness for the plaintiff, in answer to a question as to whether the Gulf road was a public road and if the public travelled the roadway, answered: “Well, it didn’t use to be public "but it’s public now. Everybody travels it, I mean the Myerses and the oil people.”
In the case of Puyper et al. v. Pure Oil Co. et al., 215 Miss. 121, 134-135, 60 So.2d 569, 573 (1952), Justice Kyle, in speaking for the Court, said:
"The general rule is that one whose property does not abut on the closed section of a street has no right to compensation for the closing or vacation of the street, if he still has reasonable access to the general system of streets. The circumstances in some cases may be such as "to give a right to damages to a property owner, even though his property does not •abut on the closed section. But to warrant recovery in any such case the property owner must shozv that the situation is such that he has sustained special damages differing in kind, and not merely in degree, from those sustained by the public generally. 18 Am.Jur., p. 856, Eminent Domain, par. 224.
“In the case of Tomaszewski, et al. v. Palmer Bee Co., et al., 223 Mich. 565, 194 N.W. 571 [572], the Court held that mere inconvenience to owners of property abutting on a street but not on a closed section, in having to go around instead of through the adjacent block, when proceeding in that direction, does not constitute a taking of property. In that case the Court said: 'It is a well-settled rule that a lot owner’s right to object to the vacation of a part of a street depends upon whether his lot abuts upon or comes in actual contact with the vacated portion, or access to his lot is entirely or materially cut off by reason of the vacation. That he may be inconvenienced or that he may have to go a more roundabout way to reach certain points does not bring to him any injury different in kind from the general public, but only in degree. If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is damnum absque injuria. Buhl v. [Fort. St.] Union Depot Co., 98 Mich. 596, 57 N.W. 829, 23 L.R.A. 392. See, also, Baudistel v. Michigan Central Railroad Co., 113 Mich. 687, 71 N.W. 1114; [John K. Cummings] Realty & Investment Co. v. Deere & Co., 208 Mo. 66, 106 S.W. 496, 14 L.R.A.,N.S., 822; Kinnear Mfg. Co. v. Beatty, 65 Ohio St. 264, 62 N.E. 341, 87 Am.St.Rep. 600; McQuillin Mun. Corp., Vol. 3, § 1410; Elliott, Roads & Streets, 3d Ed., § 1181.’ ” (Emphasis added.)
To the same effect is Mississippi State Highway Commission v. Fleming et ux., 242 Miss. 402, 135 So.2d 821 (1962).
Myers is not an abutting property owner, and at the present time he does have means of ingress and egress from his home to the general system of roads and highways over the Gulf Oil Corporation’s road. But this is a private road built by Gulf to service its producing oil wells. Suppose these wells played out and Gulf gave up its leases and the roadway reverted to the private landowners, then permission to use this roadway could very well be denied Myers. We do not think that Myers is precluded from seeking redress until this actually happens. We think that he is now suffering special damages differing in kind, and not merely in degree, from those sustained by the public generally, and that he is entitled to recover such special damages.
The question that now presents itself is whether there is credible evidence in the record from which the jury could *412 reasonably and intelligently fix the amount of the special damages. From a careful reading and study of the record we reach the conclusion that the evidence is simply not there.
The only witness as to the before and after market value of the M. O. Myers’ property was M. O. Myers himself. After most extended questioning, he finally testified that he could have gotten for his land about $200.00 per acre before the road was closed, and that its value after the closing of the road was about $50.00 per acre. The only qualification that Myers had to testify about values at all was that he was the actual owner. He was not a realtor, he was not an appraiser of real estate, and he was not even a recent seller of real estate. He did not testify as to any recent sales of comparable property, either because he did not know of any or because there was none.
Myers did not give any rational basis for his opinion that his property was depreciated three-fourths of its prior value. The verdict of the jury was so excessive as to shock the conscience, and evinces bias, prejudice and passion for the plaintiffs.
The instruction for the plaintiff that he is entitled to recover damages suffered “as a result of the decrease in value of his real property, if any, and any special damages, if any, that he has suffered,” is fatally defective. Myers is not an abutting property owner. He is entitled to recover special damages that he has suffered as distinguished from the general public. These special damages must differ not only in degree but also in kind. In this particular case, he can not recover both special damages and damages resulting from a decrease in the value of his property. It is an “either or” and not a “both and” proposition.
The judgment is, therefore, reversed and the cause remanded for a new trial on the issue of damages only.
Reversed and remanded.
ETHRIDGE, C. J., and RODGERS, JONES and INZER, JJ., concur.