■ JESSE FISHER et al., Appellants, v. FRANCIS X. BECKER et al., Constituting the Board of Trustees of the Incorporated Village of Lynbrook, Respondents.— In an action to declare a modified urban renewal plan adopted by defendants illegal and void and to enjoin defendants from enforcing and furthering the plan, plaintiffs appeal from a judgment of the Supreme Court, Nassau County, dated May 29, 1968, which dismissed the complaint after a nonjury trial. Judgment modified, on the law and the facts, by striking from the decretal paragraph the words " dismissing plaintiffs' complaint " (which appear after the words " Adjudged that the defendants have judgment ") and substituting therefor the following: " declaring that the urban renewal plan as adopted by the defendants is legal and valid and the plaintiffs are not entitled to the injunction sought in the complaint ". As so modified, judgment affirmed, without costs. In our opinion, the public purpose of the entire urban renewal concept encompassed in article 15 of the General Municipal Law, and its implementation in furtherance of the overall public interest of a particular community affected by a plan adopted pursuant thereto, must be deemed to transcend the comparatively limited public purpose served by the use of any parcel acquired as part of a business complex of that community before this comprehensive renewal concept was conceived or legislated into existence. In that perspective, we construe the statute as constituting the requisite State legis-

lation to vest in the municipality the authority, *inter alia,* to sell real property theretofore acquired by it for a public purpose and still in use as such. Accordingly, to the extent that such authorization may be considered as conflicting with any proscription contained in any local law such as section 311 of the Village Law, it is superseding and controlling (General Municipal Law, § 507, subd. 2; § 520). We are further of the opinion that the requirement that the urban renewal plan conform to the master plan "as a whole" (General Municipal Law, § 503, subd. [g]; § 505, subd. 4, par. [d]) implies substantial conformity and that necessarily contemplated in the statute (§ 505) are modifications which are in keeping with the overall design of the master plan for the community, of which the central business district is a significant part. It is our view that the urban renewal plan as modified and adopted was in keeping with the expressed design of the master plan to provide direct access for the pedestrian to the more comprehensive and modern shopping complex and the commercial structures encompassed in such modified plan and that it was in keeping with the Planning Commission's expressed recognition of the flexibility of its master plan. As such, plaintiffs' criticism that it was not the product of further study, which the commission and the Board of Trustees evidently considered unnecessary, is not persuasive. In any event, absent an allegation of fraud and corruption and absent proof thereof (the burden of which we find plaintiffs have not sustained despite some aspects of the proof which might suggest self-serving motives), we are of the opinion that there is no basis for the injunctive relief sought (18 McQuillin, Municipal Corporations [3d ed. rev.], § 52.07; cf. *Talcott* v. *City of Buffalo,* 125 N. Y. 280, 288). Nor is there any adequate basis at bar, predicated on the totality of the facts and circumstances adduced, for (a) judicial interference with the municipality's exercise of its police power in the public interest (*Berman* v. *Parker,* 348 U. S. 26, 32), or for (b) judicial review of the reasonableness of the exercise by the Board of Trustees of its legislative function in adopting the modified urban renewal plan (*Rodgers* v. *Village of Tarrytown,* 302 N. Y. 115, 121; *Matter of Gellis* v. *Clark,* 32 Misc 2d 597, 600), or for (c) judicial interference with the findings of the Board of Trustees, in the exercise of such legislative function, that the plan as adopted conforms to the master plan as a whole (cf. *Kaskel* v. *Impellitteri,* 306 N. Y. 73; *Matter of Fix* v. *City of Rochester,* 50 Misc 2d 660). Finally, we are of the opinion that the fact that plaintiffs' properties together with those of other taxpayers in the specific area involved, were subjected to special benefit assessments to finance 55% of the cost of acquisition and improvement of the parking field is not a persuasive basis for interfering with the Board of Trustees' exercise of its powers of acquisition, condemnation or sale in implementing its urban renewal plan (cf. *Clayton & Lambert Mfg. Co.* v. *City of Detroit,* 34 F. 2d 303; *Kean* v. *City of Elizabeth,* 55 N. J. L. 337; *Kemp* v. *Seattle,* 149 Wash. 197, app. dsmd. and cert. den. 279 U. S. 825; 11 McQuillin, Municipal Corporations [3d ed. rev.], § 30.185b). Nor do we consider the proposed allocation of the proceeds of the sale of the parking field towards defraying condemnation costs vis-a-vis retirement of the balance due on the public bonds a misuse of public funds so as to warrant judicial interference with the Board of Trustees' prerogative and discretion to avail itself of either of the two legitimate alternatives. Upon the determination of a declaratory judgment action on the merits against the plaintiff, the court must declare the parties' rights and not dismiss the complaint (*Jewish Center of Mt. Vernon* v. *Mt. Eden Cemetery Assn.,* 12 N Y 2d 773, 775; *Lanza* v. *Wagner,* 11 N Y 2d 317, 334). Beldock, P. J., Brennan, Benjamin, Munder and Martuscello, JJ., concur.