■ In the Matter of LOWER EAST SIDE JOINT PLANNING COUNCIL, Individually and on Behalf of Its Member Organizations, et al., Appellants, v NEW YORK CITY BOARD OF ESTIMATE, Respondent. — Judgment of the Supreme Court, New York County (Tyler, J.), entered March 31, 1981, dismissing the petition, is affirmed, without costs. In this article 78 proceeding, the proposed sponsor of an urban renewal project and one of the occupants presently residing at the proposed site, challenge the action of the Board of Estimate of April 24, 1980, which petitioners allege modified an urban renewal plan by "eliminating 100 units of low-income family housing." In 1965 the City Planning Commission approved and certified to the Board of Estimate an urban renewal plan for an area designated as the Seward Park Extension Urban Renewal Area, comprised of 14 blocks on the lower east side of Manhattan. That same year the Board of Estimate approved the plan by appropriate resolution. The plan called for 1,800 newly constructed dwelling units and a small amount of commercial space. In July, 1979 the Department of Housing Preservation and Development submitted to the City Planning Commission an "Amended Urban Renewal Plan for the Seward Park Extension Urban Renewal Area."

The amended plan related to 4 of the 14 blocks in the original plan. The amended plan consisted of (1) designating a certain portion of the area for commercial use rather than the originally approved use as public and semi-public space — this change because of the city's need for more revenue, (2) designating a certain portion of the area for the new construction of 156 dwelling units (one building of 14 stories) for the elderly and handicapped, and (3) setting aside another part of the area for the development (new construction) of 100 dwelling units for low- and moderate-income families. Item No. (3) is the provision at issue. On February 25, 1980 the City Planning Commission, after a public hearing, approved the amendment. The commission filed its approval and adoption of the amended plan with the Board of Estimate on March 18, 1980. A public hearing, advertised by resolution of the Board of Estimate, was held on April 24, 1980. At the conclusion of the hearing and while the resolution to approve the amended plan was still pending before the board, Borough President Stein "read into the record" a statement outlining his support for an amendment to the amended plan. The Stein amendment proposed that the 100 dwelling units designated for low- and middle-income families in the amendment be designated instead exclusively for low-income housing for the elderly. The Stein amendment to the proposed resolution to approve the amendment to the original plan was adopted by the Board of Estimate 7 to 4. A vote was taken on the resolution as amended, and this passed the Board of Estimate 9 to 2. We find, as did Special Term, that: (a) The change made by Andrew Stein's amendment was a minor modification of the amendment to the plan of the Seward Park Extension Urban Renewal Plan, (b) The Board of Estimate had the power (authority) to make such minor modification, and (c) The manner in which the Board of Estimate made the modification was proper. (a) *Minor Modification:* The change was a minor modification. Contrary to the impression petitioners seek to convey, 100 units were not eliminated from the plan. They were retained in the plan but were reserved for the elderly rather than low- or moderate-income families. The master plan provided, *inter alia,* for 1,800 dwelling units to be constructed. The modification affected only 100 of the 1,800. Such modification was "in keeping with the overall design of the master plan for the community" *(Fisher v Becker,* 32 AD2d 786, 787, affd 26 NY2d 938) and made only a nonessential change in the plan *(Margulis v Lindsay,* 31 NY2d 167). The change does not affect the physical design, esthetics, safety or convenience of the community *(Margulis v Lindsay, supra,* p 172). The essential aspect of the plan (1,800 residential units) has not changed *(Margulis v Lindsay, supra,* p 173). (b) *Power (Authority) To Make Such Modification:* The Board of Estimate has the power (authority) to make such minor change. It has the "final authority respecting the use, development and improvement of city land" (New York City Charter, § 67, subd 4). Subdivision 3 of section 505 of the General Municipal Law does not preclude the board from making a change of a minor nature without prior submission to the City Planning Commission. The approval process was never intended to allow a minor change to delay final action by the board (cf. *Margulis v Lindsay, supra).* (c) *The Manner In Which The Modification Was Made:* As a minor modification, no more than a simple majority of the Board of Estimate was needed. The vote was 7 to 4 and again 9 to 2. Even assuming, as the dissent asserts, that subdivision c of section 62 of the New York City Charter was applicable, the voting procedure used was valid. A motion to amend a pending resolution requires only a majority vote (New York City Corporation Counsel, Opinion No. 108701, dated July 19, 1979). The vote was 7 to 4. Passage of a resolution as thus amended requires a three-quarter vote (New York City Charter, § 62, subd c; see New York City Corporation Counsel, Opinion No. 108701). The vote was 9 to 2. In addition, as necessitated by

subdivision c of section 62 of the New York City Charter, the public was given an adequate opportunity to discuss the issue involved in the Stein amendment, and in fact did so, prior to the final approval by the Board of Estimate. Accordingly, the action of the Board of Estimate was valid. Concur — Birns, Ross and Silverman, JJ.

Murphy, P.J., dissents in a memorandum as follows: For the following reasons, the judgment should be reversed and the petition should be granted declaring the Board of Estimate's final vote in this matter to be a nullity. First, the board did not have legislative authority to amend the amended plan approved by the City Planning Commission. Subdivision 3 of section 505 of the General Municipal Law, the controlling statute, does not give the board the right to amend a plan approved by the commission. The board must accept or reject a plan *in toto*. Second, even if it were assumed that the board had authority to make minor modifications in the amended plan, the amendment under discussion was of major proportions. It should be stressed that petitioner Chong and others with top priority in obtaining low income and moderate housing under the amended plan were divested of those rights by the subject amendment creating housing for the elderly. For Chong and those similarly situated, this amendment by the board was not minor. Third, the board's resolution approving the amendment to the amended plan was a nullity since the measure was not approved by three fourths of all votes entitled to be cast (New York City Charter, § 62, subd c). Fourth, the general public was never given an opportunity to be heard on the amendment because the borough president introduced it after public discussion had been terminated (New York City Charter, § 62, subd c).