CHRISTIAN H. BUHL v. THE FORT STREET UNION DEPOT
COMPANY.

*Eminent domain—Discontinuance of street—Damages—Union
depot companies.*

1. The injury sustained by a land-owner whose land fronts upon
a public street, but not upon that portion occupied and closed
by a union depot company under Act No. 94, Laws of 1891,
and whose means of ingress and egress are not thereby cut
off, but only rendered less convenient, is *damnum absque in-
juria*, and damages are not recoverable under said act, which
provides that, in case of such occupancy and closing, the com-
pany shall pay to all parties entitled to the same any and all
damages that may accrue to them in consequence thereof.

2. The following propositions are summarized from the opinion of
Mr. Justice MONTGOMERY:

   *a*—Under the right of eminent domain, where there is no
other limitation of the power than such as is contained in our
Constitution, which provides that private property shall not be
taken for public use without just compensation, it is compe-
tent for the Legislature to provide for a public improvement
which may work incidental damage to property without pro-
viding compensation for property not actually taken; citing
*Hinchman v. City of Detroit,* 9 Mich. 103; *People v. Board of
Supervisors,* 20 Id. 95; *City of Pontiac v. Carter,* 32 Id. 164.

   *b*—The distinct question whether the discontinuance of a
public street, or its appropriation to other purposes than that
of a highway, constitutes a taking of the property of the
users (other than abutting owners) has been distinctly ruled in
the negative by many of the American courts; citing *Paul v.
Carver,* 24 Penn. St. 207; *McGee's Appeal,* 114 Id. 477; *Smith
v. City of Boston,* 7 Cush. 254; *Fearing v. Irwin,* 55 N. Y.
486; *Hatch v. Railroad Co.,* 25 Vt. 49.

   *c*—A distinction may well be held to exist between an injury
resulting to an abutting owner, or to another so situated that
the means of ingress to and egress from his premises are cut
off by the discontinuance of a street, and to one owning land
upon another street, or on the same street, but at a distance
from the part of the highway discontinued.

Error to Wayne. (Hosmer, J.) Argued November 16 and 17, 1893. Decided February 6, 1894.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*C. A. Kent,* for appellant.

*F. A. Baker* and *James F. Joy,* for defendant.

MONTGOMERY, J. The common council of the city of Detroit vacated that portion of Fourth street in said city extending from Congress street to Fort street. The defendant thereupon occupied the vacated portion of the street for depot purposes, which of course resulted in closing the street to public travel. The action was had under authority of Act No. 94, Laws of 1891, amendatory to the "Union Depot Act," so called. The amendatory section of 1891 provides that—

" Any corporation organized under this act shall have power, with the consent of the common council of any city, or the village board of any village, in which the station and depot grounds of such company are located, to occupy and close any highway, street, or alley within the limits of its station and depot grounds, but such company shall pay to the parties entitled to the same any and all damages that may accrue to them in consequence of the closing of any such highway, street, or alley; and such damages may be recovered in an action on the case in any court of competent jurisdiction."

The plaintiff is the owner of a brick block fronting Fourth street, and extending from Larned street to Congress. He brings this suit to recover damages resulting to his property from the closing up of Fourth street between Congress and Fort. The portion of the street beyond Congress is made less accessible from plaintiff's property, it being made necessary to make a detour to Third street instead of passing directly through what was formerly a

part of Fourth. It cannot be doubted that there has been some resulting disadvantage occasioned by the closing of that portion of the street. The question presented is, is the resulting inconvenience *damnum absque injuria,* or should the damages actually resulting to the property be held recoverable? It is contended, on the one hand, that such inconvenience as the plaintiff suffers is of like character to that which any member of the community submits to, differing only in degree. On the other hand, it is broadly claimed that under the statute in question any person who is actually damaged by the closing of the street is entitled to recover his damages, and the fact that it is difficult to draw the line showing when depreciation of property will end does not militate against the right, or present any greater obstacle than is often presented in other classes of cases, and that the question can safely be left to the good sense of the court and the jury.

Under the right of eminent domain, where there is no other limitation of the power than such as is contained in our Constitution, which provides that private property shall not be taken for public use without just compensation, it is conceded that it is competent for the Legislature to provide for a public improvement which may work an incidental damage to property without providing compensation for property not actually taken. See *City of Pontiac v. Carter,* 32 Mich. 164; *Hinchman v. City of Detroit,* 9 Id. 103; *People v. Board of Supervisors,* 20 Id. 95. And the distinct question of whether the discontinuance of a public street, or its appropriation to other purposes than that of a highway, constitutes a taking of the property of the users generally (other than abutting owners) has been distinctly ruled in the negative by many of the American courts. See *McGee's Appeal,* 114 Penn. St. 477; *Smith v. City of Boston,* 7 Cush. 254; *Paul v. Carver,* 24 Penn. St. 207; *Fearing v. Irwin,* 55 N. Y. 486; *Hatch v Railroad*

*Co.,* 25 Vt. 49; Dill. Mun. Corp. (4th ed.) § 666. But it is contended that the statute in question is more nearly analogous to those constitutional provisions, which exist in some of the states, that property shall not be taken or *damaged* for public use without just compensation, and it is urged that where these provisions exist, in some of the states at least, a doctrine has been held which sustains the plaintiff's contention here. Plaintiff's counsel also relies upon decisions of the English courts as sustaining his contention. The English statute provides for compensation to the owner of lands injuriously affected, and it has been held that this entitled one to compensation whose land was permanently diminished in value by an authorized obstruction to a street, although his lot was at a distance from the obstruction. *M'Carthy v. Board,* L. R. 7 C. P. 508, L. R. 7 H. L. 243; *Railway Co. v. Walker's Trustees,* 7 App. Cas. 299. Mr. Sedgwick, in the eighth edition of his work on Damages (section 1093), comments upon these decisions as follows:

"The disposition made by the English courts of the question of redress for interference with access from private property to streets and highways (and the case of water highways, etc., is the same) is particularly deserving of attention. Under the rule already stated, if the owner has suffered no injury to his right of ownership he would have had no right of action in respect of his interest in lands if there had been no statutory powers; consequently he cannot maintain a claim to compensation under the statute. The claim, therefore, seems to be limited and defined by the right of access. If the access is taken away, or rendered less convenient, and the value of the lands depreciated, even though they do not immediately abut on the public highway or river, the plaintiff can recover; but if the obstruction is only temporary, or an inconvenience, diverting the public and causing a loss in custom or trade, the damage, as it would not have given the owner any right of action if there had not been any statutory powers, is not recoverable."

The plaintiff also cites cases in which the construction of a constitutional provision entitling the party to compensation where property is taken or damaged is claimed to be sufficiently broad to include the present case. The cases cited are: *Rigney v. City of Chicago*, 102 Ill. 64; *City of Chicago v. Taylor*, 125 U. S. 161; *Gottschalk v. Railroad Co.*, 14 Neb. 550; *Railway Co. v. Hazels*, 26 Id. 364; *Railroad Co. v. Janecek*, 30 Id. 276; *Harvey v. Railroad Co.*, 90 Ga. 66; *City of Omaha v. Kramer*, 25 Neb. 489; *Montgomery v. Townsend*, 80 Ala. 489; *Railroad Co. v. Williamson*, 45 Ark. 429; *Moore v. City of Atlanta*, 70 Ga. 611; *Town of Longmont v. Parker*, 14 Colo. 386.

In the case of *Town of Longmont v. Parker* it was held that, under a constitution providing compensation for lands taken or damaged, a land-owner whose means of ingress and egress are interfered with by the construction of a ditch on the highway abutting his land is entitled to recover as damages depreciation of the property because of such ditch,—Richmond, C., dissenting.

In *Moore v. City of Atlanta* it was held that, under a similar constitution, damages resulting to the abutting owner from a change in the grade of a street could be recovered. The same thing was held in *Montgomery v. Townsend*.

In *Railroad Co. v. Williamson* it was held that the owner of premises abutting upon a street may recover from a railroad company damages resulting to his premises from the construction of the roadbed in its right of way along the street in such a manner as to obstruct access to the premises, though the owner has no interest in the fee.

In the case of *City of Omaha v. Kramer* it was held that the construction of a viaduct on a street upon which the plaintiff's land abutted was such damage as could be recovered for, the court stating that, under the constitu-

tional provision providing that property taken or damaged
shall be paid for, the words "or damaged" include all
actual damages resulting from the exercise of the right of
eminent domain which diminish the market value of private
property.    The court repudiate the English rule, and the
rule adopted in Pennsylvania, that, under such a provision,
no damage can be recovered except such as the plaintiff
would be entitled to sue for and recover at the common
law if the act had not been authorized by statute.    See,
as to the English rule, 3 Sedg. Dam. § 1124; the Pennsyl-
vania rule, *Railroad Co. v. Marchant,* 119 Penn. St. 541.
In *Rigney v. City of Chicago* the city constructed a via-
duct or bridge along Halsted and across Kinzie streets at
their intersection, which was 220 feet west of plaintiff's
premises, fronting on Kinzie street.    The viaduct in ques-
tion cut off all communication with Halsted street by way
of Kinzie street, except by means of a pair of stairs at
the intersection of the streets.    Halsted street is one of
the main thoroughfares of Chicago, on which is operated
a line of horse railway.    The evidence showed that the
value of plaintiff's lot was largely depreciated.    The
question is considered at great length, and the majority
of the court reach the conclusion that the plaintiff, under
the facts stated, is entitled to recover compensation for
the injury to his property; the constitution providing that
private property shall not be taken or damaged for public
use without just compensation.    Three members of the
court dissented from this opinion,—Justices Scott, Craig,
and Sheldon.

The supreme court of the United States, in *City of Chi-
cago v. Taylor,* followed the decision of the state court,
and affirmed a recovery by a plaintiff whose property was
damaged by the construction of a viaduct on the street
abutting the plaintiff's premises.

Limitations have been placed upon the rule by the su-

preme court of Illinois. In *City of Chicago v. Building Ass'n,* 102 Ill. 379, the complainant sought to enjoin the closing of a street 3½ blocks from its premises, which act it claimed worked a peculiar injury to it. The court say:

"It has been supposed in argument that our constitution, in providing that 'property shall not be damaged for public use without due compensation,' necessarily modifies the doctrine of these cases [referring to Massachusetts, Pennsylvania, Iowa, and other cases cited] to some extent. So far as affects the present question, we are of opinion this supposition is not well founded."

See, also, the case of *City of East St. Louis v. O'Flynn,* 119 Ill. 200.

The counsel for the plaintiff argues that these cases were wrongly decided, as the court attempt to determine as a matter of law in each case whether damages have resulted. This only illustrates the difficulty in drawing any precise line, if it be admitted that one other than the abutting owner is entitled to recover damages for the obstruction or discontinuance of a public street. Indeed, it is not altogether clear that the line intended to be drawn by the supreme court of Illinois is not the one indicated, namely, between an abutting owner affected by the closing of a street adjacent to his premises and one whose property is incidentally affected by the closing of a street in another block. In *City of East St. Louis v. O'Flynn,* 119 Ill. 204, it is said:

"The only question that can be considered in this court is purely a question of law. It is, can defendant, as a matter of law, be held liable to the plaintiff for damages resulting from the vacation of streets and alleys between Front and Fourth streets, the vacation being in another block in the city than that in which plaintiff's property is situated?"

The court then considered the force and effect both of the constitutional provision and the statute of the state as bearing upon the subject; the constitutional provision being

that private property shall not be taken or damaged for public use without just compensation, and the statute providing that when property is damaged by the vacation or closing of any street or alley the same shall be ascertained and paid as provided by law. The court say:

"Here plaintiff's lot is not adjacent to the streets or alleys vacated. It is in another block. The access to and egress from his lot are not affected by the vacating ordinance passed by the city. The street in front and the alley in the rear of his property remain open as before, affording the same access to and egress from it. The inconvenience that would be occasioned to plaintiff in going from the street in front of his house to a particular part of the city, on account of vacating and closing up certain streets and alleys in another block, is the 'same kind' of damage that would be sustained by all other persons in the city that might have occasion to go that way; and, although the inconvenience he may suffer may be greater in degree than to any other person, that fact would not give him a right of action."

The court held that he had no right of action.

In *City of Chicago v. Building Ass'n* it was held that the fact that property-owners upon a street have been specially assessed as benefited by the opening of a street some blocks off, and have paid assessments, does not give them any special property in said street, any more than any other tax-payer, and gives them no equitable ground to enjoin the vacation of such part of the street.

The same view was taken in. *Kean v. City of Elizabeth,* 54 N. J. Law, 462. It was said:

"It is assumed by counsel for prosecutrix that, because the prosecutrix was assessed for a benefit resulting from the opening of this street peculiar to herself, she got a vested right in the continued existence of the street, of which she could not be stripped without compensation. But this, I think, is more plausible than substantial. While the right she got may have been of peculiar benefit to her property, yet it was a right which she shared with the public. The privilege of using the street was shared

by each member of the community. It may not have been of the same value to each member of the community, but the right to use the street was in each citizen the same. It was exclusively a public right, put under the control of the representatives of the public. It was subject to alteration or abolition when, in the judgment of those to whom the public interests were confided, those interests demanded such action."

It was held in that case that a person owning lands upon a part of a street not vacated is not deprived of any vested rights in property for which he is entitled to compensation by reason of such vacation.

A distinction may well be held to exist between the injury which results to an abutting owner, or another so situated that the means of ingress and egress to and from his premises are cut off by a discontinuance of a street, and one owning land upon another street, or on the same street at a distance from the part of the highway discontinued.

The subject has been considered by the supreme court of Massachusetts many times. In *Stanwood v. City of Malden,* 157 Mass. 17, damages were sought for a discontinuance of a part of Summer street in Malden, which ran into Florence street obliquely just opposite the petitioner's land. It was said it is possible, if not probable, that the money value of petitioner's property was diminished by diverting the stream of travel which formerly flowed towards it over Summer street; and it was contended on the authority of the English cases, and for the further reason that the laying out of the discontinued piece of street would have been a benefit for which the petitioner might have been assessed, that a recovery should be had for its discontinuance. But the supreme court, following *Smith v. City of Boston,* 7 Cush. 254, denied the right.

In *Smith v. City of Boston* it appeared that the plaintiff owned several lots in the city on or near Market street,

and offered to prove that the value of each had been lessened, and the rent of one or more of them diminished, but it appeared that no one of the lots bounded on that part of the street which had been discontinued. Chief Justice Shaw, in conveying the opinion of the court, said:

"There is obviously a difficulty in laying down a general rule applicable to all cases. One limit, however, must be observed, which is that the damage for which a recompense is sought must be the direct and immediate consequence of the act complained of, and that remote and contingent damages are not recoverable. The inconvenience of the petitioner is experienced by him in common with all the rest of the members of the community. He may feel it more, in consequence of the proximity of his lots and buildings. Still it is a damage of like kind, and not in its nature peculiar or specific. * * * We do not mean to be understood as laying down a universal rule that in no case can a man have damages for the discontinuance of a highway unless his land bounds upon it, although, as applicable to city streets, intersecting each other at short distances, it is an equitable rule. A man may have a farm, store, mill, or wharf, not bounding on a street, but communicating with it by a private way, so situated that he has no access to his property but by the public way. If this is discontinued, he must lose the benefit of his estate or open a way at his own expense, which might be a direct and tangible damage consequent upon the discontinuance of the public way, and we are not prepared to say that he would not have a claim for damages under the statute."

In *McGee's Appeal*, 114 Penn. St. 477, the court consider the effect of a constitutional provision which reads as follows:

"Municipal and other corporations and individuals, invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured, or destroyed by the construction or enlargement of their works," etc.

The court held that this gave no right of action to the owner of a lot whose property was incidentally injured by the vacation of a public street.

In the case of *Coster v. Mayor*, 43 N. Y. 399, the city was authorized by act of the legislature to cause the removal of a bridge which was a portion of a street leading to plaintiffs' lot, which act provided that the city should pay all damages to property caused by the improvement, and should enter into a contract and give a bond to the state to do so. The language of the act was substantially the same as that under consideration here. The court say:

" 'Damage' and 'claim' are words having a well-defined meaning in statutes and legal instruments. And for so much as they rightfully convey, for so much is the city bound. 'What is a claim? It is, in just judicial sense, a demand of some matter, *as of right*, made by one person of another, to do or forbear to do some act or thing *as a matter of duty.*' The plaintiffs may claim no more of the city than the law will give them as a matter of right. The city need pay as much as the state should pay as matter of duty."

Considering the question of whether the plaintiffs had such a right which had been encroached upon, the court say:

" The plaintiffs further claim that the best approach to their property having been by the Hamilton-street bridge, and that having been entirely removed by the agents of the state, a damage has resulted to their property for which the city is liable. No part of the bridge was on the property of the plaintiffs. They had no interest or right in it as property. There is left to the plaintiffs an approach to their property by the State-street bridge, though less near, less easy, less commodious. The damage to the plaintiffs' property from this cause is entirely indirect and remote. It is not claimed to the contrary, and we shall assume that the state had right, by virtue of this act or from other source, to do this work, and in doing it to remove this bridge. The bridge, so far as the plaintiffs were interested in it, was but a part of a public street or highway. Over streets and highways the legislature has control, and may, when no private interests are involved or invaded, close them and altogether relinquish

their use by the public. And if in the exercise of this right a street be discontinued, and the value of lands abutting on other parts of the street and on neighboring streets is lessened, it is not such an injury to the owner as to entitle him to damages."

In *Glasgow v. St. Louis*, 107 Mo. 204, the plaintiffs sought to enjoin the vacation of Papin street, from Twelfth street to Thirteenth street, one block east of property owned by plaintiffs, lying between Thirteenth and Fourteenth streets. The situation of the property was not materially different from the property of plaintiff in the present case. The court say:

"There is no doubt but a property-owner has an easement in a street upon which his property abuts which is special to him and should be protected, but here the plaintiffs own no property fronting or abutting on the part of the street which was vacated. Their property is surrounded by streets not touched or affected by the vacating ordinance. They will be obliged to go a little further to reach Twelfth street, but that is an inconvenience different in degree only from that suffered by all other persons, and it furnishes no ground whatever for injunctive relief.

"Nor are the plaintiffs entitled to any relief by reason of the clause in the present constitution which declares 'that private property shall not be taken or *damaged* for public use without just compensation.' To entitle them to relief because their property will be *damaged*, though not taken, they must show a special injury. Here there is no physical interference with their property, nor is any right or easement connected therewith or annexed thereto affected. They will, therefore, suffer no injury which is special or peculiar to them. The inconvenience, if any in reality there is, is the same as that cast upon other persons. For these reasons the constitutional amendment furnishes them no ground for complaint."

We think the weight of authority in this country fully sustains the contention of defendant that such an injury as that resulting to the plaintiff here is one which he suffers in common with the general public, and *damnum absque injuria*.

But it is contended by the plaintiff that, unless the amendatory act is so construed as to give the plaintiff a right of action in the present case, the provision that damages may be recovered is rendered wholly nugatory, as it is urged that only such streets as are within the depot grounds are permitted to be vacated, and that there is no abutting owner who could be injuriously affected by the closing of such streets. And, as applied to the present case, such is possibly the result of this construction. But the act is general, and applies to all depot companies. The street which passes through depot grounds may be a *cul de sac,* and in such case the closing of a street might leave the owner of the property without any means of egress whatever. In such case, undoubtedly, his right to damages would be as clear for the interruption of his means of ingress and egress as would be that of the abutting owner for a similar interference with a like right. See opinion of Shaw, C. J., in *Smith v. City of Boston, supra; Pearsall v. Board of Supervisors,* 71 Mich. 438; 74 Id. 558; *Goss v. Highway Commissioner,* 63 Id. 608; *Phillips v. Highway Commissioner,* 35 Id. 15.

The circuit judge directed a verdict for the defendant on the ground that the plaintiff was not entitled to recover any damages for the closing of the street in question. We think his conclusion was right, and the judgment will be affirmed, with costs.

The other Justices concurred.