ROSS v CITY OF DEARBORN

1. Municipal Corporations—Sale of Real Estate—Constitution—Statutes.

The right of a city to sell property owned by it has been affirmatively conferred by constitution and statute, except where the sale involves park or cemetery property (Const 1963, art 7, § 29; MCLA 117.4).

2. Municipal Corporations—Special Assessments—Equitable Interest.

No equitable interest in a city-owned parking lot arose by virtue of a special assessment paid by the plaintiffs or their predecessors in title to help finance the construction of the parking lot.

3. Municipal Corporations—Sale of Real Estate—Special Assessments.

A city has the right to sell a portion of an off-street municipal parking lot purchased and constructed from city funds plus funds derived from a special assessment district.

4. Injunction—Equitable Relief—Damages—Anticipated Future Damages.

The mere fact of a plaintiff's fear of anticipated future damages is not a sufficient basis for the granting of an injunction to prevent the sale of a municipal parking lot.

Appeal from Wayne, James N. Canham, J. Submitted Division 1 January 14, 1974, at Detroit. (Docket No. 16991.) Decided March 6, 1974.

Complaint by Samuel Ross, Martin Ross, and Andrew Mina against the City of Dearborn for

References for Points in Headnotes

[1–3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 549.

Implied or inherent power of municipal corporation to sell its real property. 141 ALR 1447.

[4] 42 Am Jur 2d, Injunctions § 31.

declaratory judgment and injunctive relief to prevent the city from selling a portion of a municipal parking lot in which the plaintiffs claim an equitable interest. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Robert E. Childs,* for plaintiffs.

*Joseph Burtell* and *Carl P. Garlow,* for defendant.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and CARLAND,* JJ.

CARLAND, J. In 1958, the City of Dearborn, defendant herein, hereinafter referred to as the City, created a special assessment district charging the plaintiffs or their predecessors in title with assessments payable over a period of ten years. As a result of the district so created the City established a certain off-street parking facility on the north side of Michigan Avenue and east of Schlaff Street within its corporate limits and known as "Michigan-Schlaff Off-Street Parking Lot", containing 91 parking spaces. The plaintiffs are the owners of certain real estate on the north side of Michigan Avenue upon which they operate certain commercial or retail establishments. The parking lot in question lies directly to the west of plaintiffs' property and is admittedly convenient for use by plaintiffs' customers as well as by others. Since 1958 the City has provided other parking facilities within 500 feet of the Michigan-Schlaff lot with 107 parking spaces. Some of these are on the north and some on the south side of Michigan Avenue.

The City proposes to sell a portion of "Michigan-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968

Schlaff" containing some 22 or 23 parking spaces. That only a portion of the lot is to be sold is not important because we believe that the outcome of this litigation would be the same if the entire tract was to be sold.

The plaintiffs herein seek to restrain the proposed sale claiming that by virtue of the special assessments paid by themselves or their predecessors in title that they have thereby acquired an "equitable interest" in the real estate, although the title to the same is admittedly held in "fee" by the City.

The plaintiffs further claim that the sale would result in "irreparable injury" to them by reason of the fact that the traffic conditions on Michigan Avenue would discourage prospective customers from crossing from the south to the north side of such street. Further the plaintiffs maintain that the necessity of walking some 500 feet would further inconvenience certain of their customers.

From a judgment dismissing plaintiffs' complaint, plaintiffs appeal as of right.

The issue is well stated by the trial judge:

"Has the City of Dearborn, a home rule city, the right to sell a portion of an off-street municipal parking lot purchased and constructed from city funds, plus funds derived from a special assessment district?"

We find no constitutional or legislative restriction upon the exercise of the right of sale of property owned by a city. In fact, both by our constitution and by statute such right has been affirmatively conferred except where the sale involves park or cemetery property.

"Except as otherwise provided in this constitution the right of all counties, townships, cities and villages to the reasonable control of their highways, streets, alleys

and public places is hereby reserved to such local units of government." Const 1963, art 7, § 29.

"For the maintenance, development, operation of its property and upon discontinuance thereof to lease, sell or dispose of the same subject to any restrictions placed thereupon by law: Provided, That on the sale of any capital asset of a municipally owned utility the money received shall be used in procuring a similar capital asset or placed in the sinking fund to retire bonds issued for said utility." MCLA 117.4(e)(3); MSA 5.2078(3).

In accordance with the authority granted by the quoted section of the statute, the City by its charter is authorized to act through its officers as follows:

(a) The city and its officers shall have power to exercise all municipal powers in the management and control of municipal property and in the administration of municipal government whether such powers be expressly enumerated or not. Sec 3.1.

(b) To exercise all the legislative powers conferred upon the city by the constitution and general laws of the State of Michigan and by this charter. Sec 5.1.

(c) Section 6.4 specifically confers upon the council the power to acquire, maintain and control parking lots.

(d) Council shall have power to establish and vacate and to use and to control and regulate the use of its streets, alleys, bridges and public places (whether such public places be located within or without the limits of the city) and the space above and beneath them. Sec 6.2.

It is therefore clear that the City is empowered by its charter to sell the parking lot here involved. This fact does not seem to be seriously disputed by the plaintiffs except for the claimed equitable

interest acquired by them or their predecessors through the payment of special assessments levied against their property.

The plaintiffs claim of an equitable interest seems to be without merit. In *Clayton & Lambert Manufacturing Co v Detroit,* 34 F2d 303 (ED Mich, 1929), plaintiff sought to enjoin the City of Detroit from vacating a portion of a street, claiming that because it had paid a special assessment to widen the street that a "contractual relationship" arose requiring the city to forever maintain the street as so widened. The court rejected this argument saying:

"The final contention, that because there was an assessment required to be paid by the plaintiff or its predecessors in title for the widening of French Road establishes a contract relationship with the city to forever maintain French Road as so widened, seems to me to be answered in the negative by a long line of cases. *Crane v Hahlo,* 258 US 142; 42 S Ct 214; 66 L Ed 514 (1922); *Buhl v Fort Street Union Depot Co, supra* [98 Mich 596; 57 NW 829 (1894)]; *City of Chicago v Union Building Association,* 102 Ill 379; 40 Am R 598 (1882); *Kean v City of Elizabeth,* 54 NJ Law 462; 24 A 495 (1892), among others."

In *State ex rel Allen v Martin,* 255 Or 401; 465 P2d 228 (1970) the precise question of the case at bar was before the Court. That question being did the right exist to vacate a special assessment district from which off-street parking facilities were funded? In deciding that the city clearly had such a right, the Court spoke on page 410 (465 P2d 232) as follows:

" 'It is further urged that persons joining in the creation of the district, either as voluntary petitioners or otherwise, became clothed with certain property rights in connection with the assessments made, money

paid, and work done and benefits resulting to the property involved, and that such property rights cannot thereafter be destroyed by any dissolution proceedings.

" 'We know of no recognized theory in the law upon which it can be said that, in the exercise of its police power within the field of which it is conceded these are, the state confers upon persons directly or indirectly affected thereby a property right to have a perpetual continuing of such particular police power or any right to object to the withdrawal of such prior particular exercise of that power except upon compensation. To uphold appellants' contention in this regard, however, would be to overlook the plain and wide distinction repeatedly declared to exist between that which is done under the legislative power of eminent domain and that which is done in the exercise of its police power.' 221 NW, at 866." *[In re Koshkonong Mud Creek Drainage District,* 197 Wis 261; 221 NW 864 (1928)].

In *Kean v City of Elizabeth, supra,* plaintiff claimed that the city by vacating a certain street had divested her of a property right without just compensation. Plaintiff had been assessed for benefits and that by virtue thereof she had obtained a vested interest in the continuation of the street and the Court in response to such argument replied as follows:

"While the right she got may have been of peculiar benefit to her property, yet it was a right she shared with the public. The privilege of using the street was shared with each member of the community. Nor do I find any substance in the point that the vacation was made to subserve a private interest."

Again in *Fisher v Becker,* 32 App Div 2d 786, 787; 302 NYS 2d 470, 473 (1969), the Court was faced with a similar claim by plaintiff where the village of Lynbrook sought to vacate a parking lot funded through special assessment to which argument the Court replied:

"Finally, we are of the opinion that the fact that plaintiffs' properties together with those of other taxpayers in the specific area involved, were subjected to special benefit assessments to finance 55 percent of the cost of acquisition and improvement of the parking field is not a persuasive basis for interfering with the Board of Trustees' exercise of its power of acquisition, condemnation or sale in implementing its urban renewal plan."

We believe that the reasoning in the above decisions clearly establishes that plaintiffs' claim of "an equitable interest" is without merit.

Neither have any proofs of irreparable harm which might result to plaintiffs if the property is sold by the City been submitted by the plaintiffs. The mere fact that plaintiffs fear anticipated future damages is not a sufficient basis for the granting of the equitable relief here sought. See *Brown v Shelby Twp,* 360 Mich 299; 103 NW2d 612 (1960).

For all of the reasons given, we affirm.

All concurred.