SPIEK v DEPARTMENT OF TRANSPORTATION

Docket No. 104096. Argued November 6, 1997 (Calendar No. 15). Decided January 21, 1998.

Ronald S. and Peggy J. Spiek brought an action in the Court of Claims against the Department of Transportation, alleging inverse condemnation as a result of traffic noise, vibration, emissions, and dirt from a service drive for I-96 adjacent to their property. The court, William E. Collette, J., granted the defendant's motion for summary disposition. The Court of Appeals, Hood, P.J., and Sawyer and E. J. Grant, JJ., reversed in an opinion per curiam, finding that the plaintiffs could recover if they could show that they were harmed to a greater degree than the citizenry at large (Docket No. 151606). The Supreme Court reversed by peremptory order, 453 Mich 857 (1996), but, on reconsideration, granted the defendant leave to appeal. 454 Mich 905 (1997). The defendant appeals.

In a unanimous opinion by Justice Boyle, the Supreme Court held:

The state is not required to compensate every property owner living in proximity to a public highway for associated normal inconveniences. A claim of taking for which relief may be granted is stated only where the plaintiff alleges unique or peculiar harm.

1. Property owners are not entitled to compensation for highway noise that is necessarily incident to proximity to a highway. If such a legalized nuisance affects all in its vicinity in common, damages generally are not recoverable under just-compensation theory. Such common harms are incidental effects not amounting to an appropriation. However, where property is directly affected in a manner that is unique or peculiar in comparison to the property of other similarly situated persons, a claim for relief may be granted. The right to just compensation, in the context of an inverse condemnation suit for diminution in value caused by alleged harmful effects to property abutting a public highway, exists only where the landowner can allege a unique or special injury, an injury different in kind, not simply in degree, from the harm suffered by all persons similarly situated. In this case, the Court of Appeals erred in concluding that the plaintiffs could recover if affected to a degree dif-

ferent from the public at large. Summary disposition for the defendant was appropriate.

2. The plaintiffs' complaint does not allege harm to their property that differs in kind from the harm suffered by all persons living in proximity to a public highway. Rather, it alleges the same type of incidental and consequential harm experienced by all persons similarly situated. Because this type of harm is not sufficient under any circumstances to support an award of just compensation for a taking, the plaintiffs failed to state a claim upon which relief may be granted under MCR 2.116(C)(8).

Reversed.

212 Mich App 565; 538 NW2d 74 (1995) reversed.

*John J. Giannini* for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Patrick F. Isom*, Assistant Attorney General, for the defendant.

Amici Curiae:

*Law, Weathers & Richardson, P.C.* (by *Robert A. Buchanan*), for Kent County Aeronautics Board.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Gerald A. Fisher*) for Michigan Municipal League and Michigan Townships Association.

*Howard & Howard Attorneys, P.C.* (by *James E. Lozier*), for Michigan Railroads Association and Association of American Railroads.

BOYLE, J. We granted leave to appeal in this case to decide whether noise, dust, vibration, and fumes experienced by owners of property along an interstate freeway constitute a taking of a recognized property interest where the effects alleged are not unique or peculiar in character. We hold that such effects do not constitute a taking of a recognized property interest where the plaintiff fails to allege

that the damages incurred are unique, special, or peculiar, or in some way different in kind or character from the effects incurred by all property owners who reside adjacent to freeways or other busy highways.

We reverse the decision of the Court of Appeals and reinstate the decision of the trial court granting summary disposition.[1] Plaintiffs' complaint fails to state a claim on which the relief sought may be granted. MCR 2.116(C)(8).[2]

I

Plaintiffs Ronald and Peggy Spiek purchased residential property on Eleven Mile Road in the city of Warren in 1961, and have lived there ever since. Their property now abuts the service drive to Interstate 696. The service drive opened to traffic in 1976, and the section of the interstate running parallel to that service drive opened in 1979. The full extent of I-696, as we now know it, running continuously from Interstate 275 near Farmington Hills and Novi to Interstate 94 near St. Clair Shores, was completed and opened in 1989.

On April 20, 1990, plaintiffs filed a complaint against defendant Department of Transportation for

---

[1] We do not reach the issue whether the statute of limitations barred plaintiffs' action here, nor do we reach plaintiffs' contention that defendant was required to file a cross appeal to preserve that issue for review.

[2] We do not reach the issue whether plaintiffs have demonstrated a genuine issue of material fact under MCR 2.116(C)(10). Plaintiffs seek recovery on the basis of the argument that their damages are unique in degree, rather than in character. Because we conclude that the claim as framed does not state a legally cognizable ground for a damage remedy, the issue whether there is a question of fact regarding the degree of harm is irrelevant. See ns 9-10.

inverse condemnation[3] in the Court of Claims, alleging that defendant's actions in locating the service drive adjacent to their property had "so interfered with Plaintiffs' quiet use and enjoyment of the property as to render it worthless, and to constitute a taking of property for public purpose without payment of just compensation, as required by the Michigan Constitution, Article 10, Section 3."[4] The complaint alleged that the defendant accomplished this taking by working

> an essential change in the neighborhood [that] . . . violated restrictive covenants in the subdivision . . . [and] caused grave and serious damage to the value of the . . . property by increasing dramatically the levels of noise, vibrations, pollution and dirt in the once-residential area . . . [thus] destroy[ing] the desirability of the . . . property as an area for living and . . . destroy[ing] the acceptability of the property for residential purposes.

---

[3] This Court has held:

> An inverse or reverse condemnation suit is one instituted by a landowner whose property has been taken for public use "without the commencement of condemnation proceedings." . . . Under Michigan law, a "taking" for purposes of inverse condemnation means that governmental action has permanently deprived the property owner of any possession or use of the property. [*Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 88-89; 445 NW2d 61 (1989).]

However, more recently we stated:

> "Any injury to the property of an individual which deprives the owner of the ordinary use of it is equivalent to a taking, and entitles him to compensation. So a partial destruction or diminution of value of property by an act of government, which directly and not merely incidentally affects it, is to that extent an appropriation." [*Peterman v Dep't of Natural Resources*, 446 Mich 177, 190; 521 NW2d 499 (1994).]

[4] Plaintiffs' complaint does not allege a violation of the Fifth Amendment of the United States Constitution.

Defendant moved for summary disposition in the Court of Claims on April 23, 1991, pursuant to MCR 2.116(C)(7), (8), or (10), arguing that plaintiffs' claim of damages was barred by the three-year period of limitation applicable to actions in the Court of Claims,[5] and that plaintiffs' claim of damages for traffic noise, vibration, emissions, and dirt did not constitute a taking that would entitle them to compensation. The trial court granted the motion on the basis of the statute of limitations, holding that the case was controlled by a six-year period.[6] Plaintiffs sought reconsideration, and the trial court reversed itself, ruling from the bench that a fifteen-year period controlled.[7] Plaintiffs' action was reinstated on September 10, 1991.[8]

On February 26, 1992, defendant filed a second motion for summary disposition pursuant to MCR 2.116(C)(8) or (10). Consistent with its previous motion, defendant argued as follows:

> 5. Construction of I-696 and its service drive within the right of way abutting plaintiffs' property does not constitute a taking of plaintiffs' property. The type of injury alleged by plaintiffs is consequential and is suffered by all those whose property abuts a public highway.
>
> 6. Given the facts pled by plaintiffs, there is no legal support for plaintiffs' inverse condemnation claim.
>
> 7. Plaintiffs have failed to state a claim upon which relief can be granted.

---

[5] MCL 600.6452; MSA 27A.6452.

[6] MCL 600.5813; MSA 27A.5813.

[7] MCL 600.5801(4); MSA 27A.5801(4).

[8] On October 21, 1991, the trial court dismissed plaintiffs' claim that defendant had violated restrictive covenants in plaintiffs' subdivision. That order is not currently before this Court.

8. There is no genuine issue as to any material fact, and
defendant is entitled to judgment as a matter of law.

In their response to defendant's motion, plaintiffs
answered paragraph 5 as follows: "Plaintiffs deny that
Defendant's actions do not constitute a taking, and
further allege that to the extent that similarly-situated
property-owners have been affected in a like manner,
then they, too, are entitled to constitutionally-required
just compensation."

The trial court heard oral arguments and granted
the defendant's motion "as a matter of public policy."
During oral arguments, the trial judge asked plaintiffs'
counsel where or how to "draw the line" in this type
of case. Ultimately, acknowledging difficulty with the
question, the trial judge concluded that the plaintiffs'
"property . . . is not included under the circum-
stances of this type of case," and suggested that "a
higher court [might] give us some better direction."

The Court of Appeals reversed:

[W]e conclude that the trial court erred in dismissing
plaintiffs' claim without affording them an opportunity to
establish that their use and enjoyment of their property has
been detrimentally affected to a degree greater than that of
the citizenry at large in conjunction with the normal use of
a highway. If they can so establish, then they are entitled to
compensation for the reasons and principles set forth in
*Richards* [*v Washington Terminal Co*, 233 US 546, 554-558;
34 S Ct 654; 58 L Ed 1088 (1914)]. See also *United States v
Causby*, 328 US 256, 260-262; 66 S Ct 1062; 90 L Ed 1206
(1946). [212 Mich App 565, 568; 538 NW2d 74 (1995).]

In reaching this conclusion, the Court of Appeals
reasoned as follows:

> The trial court . . . did not dismiss plaintiffs' claim because it believed there was not sufficient evidence to establish that plaintiffs' property was burdened, indeed it even acknowledged that plaintiffs had suffered an intrusion because of the highway, but rather it dismissed the case because it believed that "there is a certain burden that each of us must bear," that "we all use that highway" and it was "built for the common good." However, as Justice POTTER said in [*James S Holden Co v*] *Connor* [257 Mich 580, 596; 241 NW 915 (1932)], if the public work is a public benefit, then the public should pay for it. [212 Mich App 568.]

We initially disposed of this case by a peremptory order of reversal on the basis of MCR 2.116(C)(10). 453 Mich 857 (1996). On plaintiffs' motion for reconsideration, we granted leave to appeal. 454 Mich 905 (1997). We conclude that the Court of Appeals erred in its interpretation of the governing legal principles.

II

A

Appellate review of a motion for summary disposition is de novo. MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. The motion must be granted if no factual development could justify the plaintiff's claim for relief. MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. The court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted or filed in the action to determine whether a genuine issue of any material fact exists to warrant a trial. *Singerman v Municipal Service Bureau, Inc*, 455 Mich 135, 138; 565 NW2d 383 (1997). See also *Skinner*

*v Square D Co*, 445 Mich 153, 160-161; 516 NW2d 475 (1994).

The defendant did not separately argue the standards under MCR 2.116(C)(8) and MCR 2.116(C)(10), and the trial court did not specifically state whether it was granting defendant's motion for summary disposition on the basis of subrule (C)(8) or (10). However, we conclude that review under subrule (C)(8) is appropriate because the factual record in this case is limited to the record made before the trial court.[9] We find nothing in the record to indicate that the trial court reviewed matters outside the pleadings; thus, our inquiry is confined to the analysis normally applied to a MCR 2.116(C)(8) motion.[10]

We conclude that plaintiffs' complaint fails to state a claim on which the relief sought may be granted.

---

[9] Where summary disposition is granted under the wrong rule, Michigan appellate courts, according to longstanding practice, will review the order under the correct rule. *Energy Reserves, Inc v Consumers Power Co*, 221 Mich App 210, 216; 561 NW2d 854 (1997); *Johnson v Davis*, 156 Mich App 550, 553; 402 NW2d 486 (1987). Consistent with that policy, because we find no indication in the trial court's ruling that the court reviewed evidence outside the pleadings in ordering summary disposition, we review the case under MCR 2.116(C)(8), which is the correct rule under these circumstances. Accord FR Civ P 12(b), where the court considers matters outside the pleadings when ruling on a motion asserting the defense under 12(b)(6) (failure to state a claim), the motion shall be treated as a motion for summary judgment under FR Civ P 56. This practice in state and federal courts grows out of recognition of the principle that where "[a] motion for summary judgment [is made] solely on the pleadings . . . , it is functionally the same as a motion to dismiss or a motion for judgment on the pleadings." 6 Moore, Federal Practice (2d ed), ¶ 56.02[3], pp 56-26 to 56-27 and ns 10-11 and accompanying text.

[10] Plaintiffs attached certain documentary evidence to their submission here. Because this material was not presented or filed in the trial court, and, thus, is not part of the record on appeal, we do not consider it. The record in this case is limited to the pleadings filed, the transcript of proceedings before the trial court, the parties' motions and responses, and the other papers filed with the trial court. The trial court did not consider plaintiffs' exhibits in ruling on defendant's motion.

Taking all plaintiffs' factual allegations as true, the complaint fails to allege an essential element of their cause of action: that the damage to their property is of a unique or peculiar character different from the effects experienced by all other similarly situated property owners. In other words, plaintiffs fail to allege an injury unlike that experienced by all who live in proximity to a highway. Thus, their case is barred by the well-accepted rule that property owners are not entitled to compensation for highway noise that is necessarily incident to proximity to a highway.

B

In deciding whether plaintiffs' complaint survived defendant's motion for summary disposition, the Court of Appeals reasoned as follows:

It has long been recognized that a diminution in the value of property where there is no direct invasion of the property, does not result in a taking that requires compensation. See *Richards v Washington Terminal Co*, 233 US 546, 554-558; 34 S Ct 654; 58 L Ed 1088 (1914). However, that principle is founded upon necessity and is limited accordingly, and compensation will be due where the burden to the property goes beyond the incidental injuries that would normally be attendant and shared generally by the property owners whose lands lie within the range of inconveniences. *Id.*

In *Richards*, the Court addressed the construction of a railroad, distinguishing between the inconveniences normally attendant to property located near a railroad track and those located by a railroad tunnel, which posed additional, peculiar burdens. Similarly, this Court concluded that compensation could be due to property owners in the neighborhood of an airport where the air traffic caused unbearable noise and property damage to nearby land. See *Standen v Alpena Co*, 22 Mich App 416; 177 NW2d 657 (1970).

In addition to trains and planes, the automobile has been considered by our Supreme Court, which concluded that compensation was due a property owner where his property was burdened by a change in incline on a road passing by his farmland. *Thom v State Hwy Comm'r*, 376 Mich 608; 138 NW2d 322 (1965). The following observation of the lead opinion in *Thom* is particularly noteworthy:

"While we might well agree that society's interests are paramount to the individual's insofar as the latter may not, for his own convenience, prohibit a grade change, we do not agree with the *Grigg Hanna* [*Lumber & Box Co v State Hwy Comm'r*, 294 Mich 346; 293 NW 675 (1940)] ruling that society may justly benefit itself at the expense of an individual by failing to compensate him for damage done to him in order to procure society's benefit. As Mr. Justice POTTER, who wrote for the Court in the first *Grigg Hanna Case*, said in his earlier concurring opinion in *James S Holden Co v Connor* [257 Mich 580, 596; 241 NW 915 (1932)]:

" 'It has always been a basic principle of the law that "If the work is of great public benefit, the public can afford to pay for it." *Eaton v Railroad Co* [51 NH 504, 518; 12 Am Rep 147 (1872)].' [*Thom, supra* at 623.]" [212 Mich App 566-568.]

The Court of Appeals references the relevant precedents. However, we respectfully disagree with the application of those authorities to this case.

The Court of Appeals concluded that, under *Richards*, plaintiffs must be given the opportunity to demonstrate that their property was "detrimentally affected to a degree greater than that of the *citizenry at large* in conjunction with the normal use of a highway." 212 Mich App 568 (emphasis added).

In *Richards*, the plaintiff sued for diminution in the value of his property caused by a railroad being located adjacent to his property. However, unlike others whose property the railroad affected, the plaintiff's property was situated so that when the train

went through a tunnel, the "smoke . . . cinders and gasses" from the train were expelled onto the plaintiff's property and into his home by "a fanning system installed in the tunnel . . . ." *Id.* at 549. The plaintiff also alleged that his house had been "damaged by vibrations caused by the movement of trains on the track or in the tunnel, resulting in cracking the walls . . . , breaking glass . . . , and disturbing the peace and slumber of the occupants." *Id.* at 550. The United States Supreme Court reversed the dismissal of the plaintiff's claim because the effects of the railroad *passing through the tunnel near his property* were unique and peculiar to him. The Court explained that recovery was available only

> in the single particular already alluded to,—that is to say, with respect to so much of the damage as is attributable to the gases and smoke emitted from locomotive engines while in the tunnel, and forced out of it by the fanning system therein installed, and issuing from the portal located near to plaintiff's property in such manner as to materially contribute to render his property less habitable than otherwise it would be, and to depreciate it in value . . . . [*Id.* at 556.]

The plaintiff was *not* allowed to seek recovery for the separate allegation of vibration causing cracks, etc., because this type of harm is that which all persons living near the railroad would suffer in common. Thus, the Court of Appeals conclusion that plaintiffs could recover if affected to a different degree than the citizenry at large fails to properly consider the more specific inquiry required by *Richards*: the effect on those property owners whose lands lie within the range of inconveniences necessarily incident to the operation of a railroad. Indeed, the very passage from

*Richards* on which the Court of Appeals purported to rely reveals that the plaintiffs here have failed to meet the requirements of that case:

> Any diminution of the value of property not directly invaded nor peculiarly affected, but sharing in the common burden of incidental damages arising from the legalized nuisance, is held not to be a "taking" within the constitutional provision. The immunity is limited to such damages as naturally and unavoidably result from the proper conduct of the road and are shared generally by *property owners whose lands lie within range of the inconveniences necessarily incident to proximity to a railroad.* It includes the noises and vibrations incident to the running of trains, the necessary emission of smoke and sparks from the locomotives, and similar annoyances inseparable from the normal and non-negligent operation of a railroad. [*Id.* at 554.]

While allowing the plaintiff to seek recovery for the peculiar effects of the tunnel exhaust system, the Court denied the plaintiff the right to seek recovery for vibration, because "those consequential damages that are necessarily incident to proximity to the railroad" are not compensable. *Id.* The Court of Appeals incorrectly concluded that *Richards* supported the conclusion that the plaintiffs could recover if they could show they were harmed to a degree greater than the citizenry at large. The plaintiff in *Richards* prevailed, not merely on the basis of a difference in degree from the inconvenience experienced by the public at large, but because the harm he suffered was different in kind or character from that experienced by those similarly situated.[11]

---

[11] In *Standen, supra,* the Court of Appeals addressed the "sole issue" whether "[a]ssuming that plaintiffs have proven an unconstitutional taking of their property and are entitled to recover, . . . the county of Alpena [is] liable to the plaintiffs for . . . damages . . . ." *Id.* at 418. Because

The Court of Appeals also referenced *United States v Causby, supra.* However, in that case, the United States Supreme Court concluded that the persistent intrusion of low-flying aircraft over the plaintiffs' land amounted to a physical invasion of the property subject to compensation as a taking of the property. The Court reasoned:

> We have said that the airspace is a public highway. Yet it is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere. . . . The principle is recognized when the law gives a remedy in case overhanging structures are erected on adjoining land. The landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land. . . . The fact that he does not occupy it in a physical sense—by the erection of buildings and the like—is not material. As we have said, the flight of airplanes, which skim the surface but do not touch it, is as much an appropriation of the use of the land as a more conventional entry upon it. . . . [I]f the United States erected an elevated railway over respondents' land at the precise altitude where its planes now fly, there would be a partial taking, even though none of the supports of the structure rested on the land. The reason is that there would be an intrusion so *immediate and direct* as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it. . . . The superadjacent airspace at this low altitude is *so close to the land that continuous invasions of it affect the use of the surface of the land itself.* We think that the landowner, as an incident to his ownership, has a claim to it and that invasions of it are in the same category as invasions of the surface. [*Id.* at 264-265 (emphasis added).]

the case did not address the issue whether a taking had occurred, the Court of Appeals reliance on this case to support its conclusion was also misplaced.

*Causby* is also distinguishable from the case before us. Our plaintiffs have not suffered a physical invasion. *Causby* is a singular example tailored to the unique requirements of modern air travel and its effects on land ownership rights. Whereas a taking akin to a physical intrusion was compensable in *Causby*, the plaintiffs here experienced the type of effects referenced by the Supreme Court in *Richards* as part of the incidental inconvenience of living in proximity to the road.

Further, the Court's analysis in *Causby* was wholly consistent with its analysis in *Richards*. In *Causby*, the Court reasoned:

> The airplane is part of the modern environment of life, and *the inconveniences which it causes are normally not compensable under the Fifth Amendment. The airspace, apart from the immediate reaches above the land, is part of the public domain. . . . Flights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land.* [*Id.* at 266-267 (emphasis added).]

Thus, only the plaintiff uniquely affected by the physical invasion of frequent low-flying aircraft will recover for a taking, while those suffering merely the normal inconveniences of modern air travel over their lands at higher altitudes will not recover. Just as in *Richards*, where the fanning system on the tunnel uniquely harmed the plaintiff, in *Causby* the aircraft were uniquely harmful to those over whose property the aircraft consistently flew at low altitude, thereby amounting to a physical invasion. Again, the analysis turned on the fact that the plaintiff suffered harm that differed in kind, as opposed to degree, from the harm suffered by others similarly situated or the public at

large. Were the inquiry simply a matter of degree, the conclusion that a physical invasion had occurred would have been unnecessary. However, recovery was available only after the Court concluded that the plaintiff, unlike others living under the flight path at higher altitudes, suffered a unique physical invasion of his property. It is precisely this factor, which the Supreme Court and this Court have identified as critical to the analysis, that the Court of Appeals failed to acknowledge.[12]

C

Courts commonly refer to the persistent passing of trains on a railroad, or planes in the air, or vehicles on the road as "legalized nuisances." See, e.g., *Richards, supra* at 552-554. As explained above, if such a legalized nuisance affects all in its vicinity in common, damages generally are not recoverable under just-compensation theory. Courts treat such common harms as incidental effects not amounting to an appropriation. Cf. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 190; 521 NW2d 499 (1994) (acknowledging recovery where partial destruction or

---

[12] In *Thom, supra,* on which the Court of Appeals also relied, the plaintiffs owned a farm in Lapeer. *Id.* at 625. We recognized a taking where the "State highway department . . . improve[d] M 53 . . . . When construction was completed, the grade of M 53 was 10 feet higher than the [plaintiff's access] drive at its southern intersection and eight feet higher than the drive at its northern intersection . . . ." *Id.* at 625-626. The plaintiff had "great difficulty in moving his machinery off" the property. *Id.* at 626. We concluded that this was a "partial taking of plaintiffs' property," *id.* at 627, because the change in the grade "demonstrably injure[d] the property," *id.* at 617, and thereby injured the plaintiffs' "right of reasonable access" to their property, which is an " 'indefeasible right.' " *Id.* at 618. *Thom* involved not the ordinary inconveniences of proximity to a public highway, but a clear injury to the plaintiffs' indefeasible right of reasonable access. Thus, *Thom* furnishes no authority for the proposition that plaintiffs can recover here.

diminution in value "directly and not merely inciden-
tally affects" the property). Where, however, the
plaintiff alleges that the property is directly affected
in a manner that is unique or peculiar in comparison
to the property of other similarly situated persons,
the plaintiff states a claim for which the relief sought
may be granted under well-established principles for
proving the right to compensation. This immunity
against recovery for the effects of a legalized nui-
sance exists under the rubric of the common-law doc-
trine of damnum absque injuria, which underlies the
reasoning offered in the cases discussed above.

Black's Law Dictionary (6th ed), p 393,    defines
damnum absque injuria as follows:

> Loss, hurt, or harm without injury in the legal sense; that
> is, without such breach of duty as is redressible by a legal
> action. A loss or injury which does not give rise to an
> action for damages against the person causing it.

Several Michigan cases have discussed the concept
of damnum absque injuria in the context of taking
jurisprudence as applied to public highways. Over
one hundred years ago, in *Buhl v Fort Street Union
Depot Co*, 98 Mich 596; 57 NW 829 (1894), this Court
recognized the distinction between special or peculiar
injuries and injuries suffered in common with the
general public. In *Buhl*, the defendant obtained prop-
erty from the city of Detroit for the purpose of main-
taining a depot, which required the closing of Fourth
Street between Congress and Fort Streets in down-
town Detroit. *Id.* at 597. The plaintiff sued because
his property was made "less accessible," and alleged,
inter alia, a taking. *Id.* The Court explained:

In *Glasgow v St Louis*, 107 Mo 204 [17 SW 743 (1891)], the plaintiffs sought to enjoin the vacation of Papin street, from Twelfth street to Thirteenth street, one block east of property owned by plaintiffs, lying between Thirteenth and Fourteenth streets. The situation of the property was not materially different from the property of plaintiff in the present case. The court said:

"There is no doubt but a property-owner has an easement in a street upon which his property abuts which is special to him and should be protected, but here the plaintiffs own no property fronting or abutting on the part of the street which was vacated. Their property is surrounded by streets not touched or affected by the vacating ordinance. They will be obliged to go a little further to reach Twelfth street, *but that is an inconvenience different in degree only from that suffered by all other persons*, and it furnishes no ground whatever for injunctive relief.

"Nor are the plaintiffs entitled to any relief by reason of the clause in the present constitution which declares 'that private property shall not be taken or damaged for public use without just compensation.' *To entitle them to relief because their property will be damaged, though not taken, they must show a special injury.* Here there is no physical interference with their property, nor is any right or easement connected therewith or annexed thereto affected. They will, therefore, suffer no injury which is special or peculiar to them. The inconvenience, if any in reality there is, is the same as that cast upon other persons. For these reasons the constitutional amendment furnishes them no ground for complaint."

We think the weight of authority in this country fully sustains the contention of defendant that such an injury as that resulting to the plaintiff here is one which he suffers in common with the general public, and damnum absque injuria. [*Id.* at 607 (emphasis added).][13]

---

[13] See also *Tomazewski v Palmer Bee Co*, 223 Mich 565, 569; 194 NW 571 (1923) (where the owner does not suffer "any injury different in kind from the general public but only in degree," the injury is damnum absque injuria); *Case v City of Saginaw*, 291 Mich 130, 141; 288 NW 357 (1939) (" '[A]cts done in the proper exercise of governmental powers, and not

The right to just compensation, in the context of an inverse condemnation suit for diminution in value caused by the alleged harmful affects to property abutting a public highway, exists only where the landowner can allege a unique or special injury, that is, an injury that is different in kind, not simply in degree, from the harm suffered by all persons similarly situated. While the Michigan courts have not had the opportunity to address this issue directly in recent years, the overwhelming weight of foreign authority supports this conclusion,[14] as do contemporary public policy considerations.

---

directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision' ").

[14] In *Friends of H Street v Sacramento*, 20 Cal App 4th 152; 24 Cal Rptr 2d 607 (1993), the California Court of Appeals addressed a factual situation similar to the one presented here. The plaintiffs alleged, inter alia, excessive traffic, excessive traffic speeds, excessive noise, noxious fumes, impairment of residential use, and safety hazards. The court denied relief, stating, "Plaintiffs fail to allege they suffered unique, special or peculiar damages, that is, 'not such as is common to all property in the neighborhood' . . . ." *Id.* at 167. The court explained further:

"Modern transportation requirements necessitate continual improvements of streets and relocation of traffic. The property owner has no constitutional right to compensation simply because the streets upon which his property abuts are improved so as to affect the traffic flow on such streets. If loss of business or of value of the property results, that is noncompensable. It is simply a risk the property owner assumes when he lives in modern society under modern traffic conditions." [*Id.*]

See also *Dep't of Transportation v Rasmussen*, 108 Ill App 3d 615, 621-622; 439 NE2d 48 (1982) (a greater degree is insufficient; peculiar and direct physical disturbance is required; depreciation suffered in common by all lands in the vicinity of an improvement is not compensable); *Public Service Co of New Mexico v Catron*, 98 NM 134, 136; 646 P2d 561 (1982) (damages must be different in kind, not merely degree); *State v Schmidt*, 867 SW2d 769, 781 (Tex, 1993) (inconveniences shared by an entire area through which a highway runs is not compensable absent peculiar harm; a difference in degree is insufficient), cert den 512 US 1236 (1994); *Yakima*

In the context of traffic flow, a degree of harm threshold, as opposed to the well-established difference in kind threshold, would be unworkable both in a practical sense and from the standpoint of public policy because it would depend on the amount of traffic traveling a particular highway at a particular time that may change over time because of factors unrelated to and out of the control of the state. For example, demographic changes and economic changes affecting commercial and industrial development may determine the degree of harm, rather than the actual location of the highway in a particular place by the state. To require the state to litigate every case in which a person owning land abutting a public highway feels aggrieved by changing traffic conditions would wreak havoc on the state's ability to provide and maintain public highways and place within the judicial realm that which is inappropriate for judicial remedy. Where harm is shared in common by many members of the public, the appropriate remedy lies with the legislative branch and the regulatory bodies created thereby, which participate extensively in the regulation of vibrations, pollution, noise, etc., associated with the operation of motor vehicles on public highways. Only where the harm is peculiar or unique in this context does the judicial remedy become appropriate.

We are persuaded that the Court of Appeals erred in concluding that plaintiffs could recover if affected to a different degree than the public at large. Sum-

---

*v Dahlin*, 5 Wash App 129, 131-132; 485 P2d 628 (1971) (allowing recovery where an overpass created an "echo chamber" that distinguished plaintiff's "special circumstances" from an injury common to all property in the neighborhood).

mary disposition in favor of the defendant in the Court of Claims was appropriate. Plaintiffs were required to overcome the doctrine of damnum absque injuria by alleging harm of a character different from that suffered by all living in similar proximity to a highway.

Plaintiffs' complaint does not allege harm to plaintiffs' property that differs in kind from the harm suffered by all living in proximity to a public highway in Michigan. Rather, plaintiffs' complaint alleges the same type of incidental and consequential harm as is experienced by all persons similarly situated to plaintiffs in that they reside near a public highway. Moreover, plaintiffs did not seek leave to amend their complaint,[15] instead maintaining in response to defendant's motion for summary disposition and on appeal that recovery was available if the harm suffered merely differed in degree from the inconvenience experienced by the public at large. Because this type of harm is not sufficient under any circumstances to support an award of just compensation for a taking, plaintiffs failed to state a claim upon which relief may be granted under MCR 2.116(C)(8).

III

The just-compensation requirement in the Michigan Constitution does not require the state to compensate every property owner living in proximity to a public highway for the normal inconveniences associated therewith. The plaintiff states a claim for which relief may be granted only where the plaintiff alleges harm of a unique or peculiar kind. We reverse the decision

---

[15] MCR 2.116(I)(5);  MCR 2.118.

of the Court of Appeals and reinstate the trial court's order granting defendant's motion for summary disposition.

MALLETT, C.J., and BRICKLEY, CAVANAGH, WEAVER, KELLY, and TAYLOR, JJ., concurred with BOYLE, J.